No. 14-1337

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

BENTON STONG,

Defendant-Appellant.

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF IOWA
Honorable Linda R. Reade, Judge
(District Court Case No.  CR13-2014)

_____

BRIEF OF APPELLANT BENTON STONG

_____

Anne M. Laverty
MULLIN & LAVERTY, LC
1636 42nd Street NE
Cedar Rapids, IA  52402
Phone:   (319) 395-9191
Fax:      (319) 395-9192
E-Mail:  alaverty@mullinlaverty.com

ATTORNEYS FOR APPELLANT
BENTON STONG

## SUMMARY OF THE CASE

On June 26, 2013, Benton Stong was charged with one count of Sexual Exploitation of a Child, in violation of 18 U.S.C. §§2251(a) and (e), and four counts of Possession of Child Pornography, in violation of 18 U.S.C. §§2252A(a)(5)(B) and (b)(2). Stong also was alleged to have committed the crimes after a previous sex abuse conviction. After a jury trial on September 16-17, 2013, Stong was found guilty on all five counts.

Stong objected to the Presentence Investigation Report (PSIR), specifically to suggested enhancements for role as babysitter of the minor victims, and the finding that some images depicted sadistic or masochistic material.

Stong was sentenced on February 3, 2014. Stong had requested, based on his age and health, a variance and departure from the Sentencing Guidelines, to a sentence of time served and home confinement with electronic monitoring. The District Court overruled Stong's objections to the PSIR and motions for variance and departure. Stong was sentenced to a total of 1,320 months in prison. Stong filed his timely Notice of Appeal on February 10, 2014. He challenges both the conviction and the sentence.

The above issues are important but not complex. Appellant requests fifteen minutes of oral argument.

i

# TABLE OF CONTENTS

PAGE

SUMMARY OF THE CASE.................................................................. i

TABLE OF AUTHORITIES ............................................................. iv

JURISDICTIONAL STATEMENT ...................................................... vii

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ......................... viii

STATEMENT OF THE CASE............................................................. 1

SUMMARY OF THE ARGUMENT ...................................................... 6

ARGUMENT .................................................................................. 7

    I.    THERE WAS INSUFFICIENT EVIDENCE TO SUSTAIN A
        CONVICTION FOR PRODUCTION AND POSSESSION OF CHILD
        PORNOGRAPHY. ................................................................... 7

        A.  Standard of review. .................................................... 7

        B.  Argument. ................................................................. 7

    II.    THE DISTRICT COURT SHOULD NOT HAVE ADMITTED THE
        VIDEO RECORDINGS. ........................................................... 9

        A.  Standard of review. .................................................... 9

        B.  Argument. ................................................................. 9

    III.    THE DISTRICT COURT SHOULD NOT HAVE APPLIED AN
        ENHANCEMENT FOR OFFENSES INVOLVING A "SEXUAL ACT"
        OR "SEXUAL CONTACT." ..................................................... 14

        A.  Standard of review. .................................................... 14

        B.  Argument. ................................................................. 14

Appellate Case: 14-1337    Page: 3    Date Filed: 06/10/2014 Entry ID: 4163144

IV.  THE DISTRICT COURT SHOULD NOT HAVE ASSESSED AN
     ENHANCEMENT FOR MATERIAL PORTRAYING
     SADOMASOCHISTIC OR VIOLENT CONDUCT................................21

        A.  Standard of review. .......................................................21

        B.  Argument. .....................................................................21

V.   THE DISTRICT COURT SHOULD HAVE GRANTED A
     DOWNWARD DEPARTURE OR VARIANCE, AND THE SENTENCE
     WAS UNREASONABLE. ...........................................................27

        A.  Standard of review. .......................................................27

        B.  Argument. .....................................................................27

CONCLUSION .....................................................................................34

CERTIFICATE OF COMPLIANCE ......................................................35

ATTORNEY COST CERTIFICATE .....................................................35

CERTIFICATE OF SERVICE ..............................................................35

Appellate Case: 14-1337    Page: 4    Date Filed: 06/10/2014 Entry ID: 4163144

# TABLE OF AUTHORITIES

PAGE

*Cases*

Evans v. Cowan, 506 F.2d 1248 (6th Cir. 1974) ..............................................13

United States v. Aldrich, 566 F.3d 976 (11th Cir. 2009) ...............................18

United States v. Baron, 914 F.Supp. 660 (D. Mass 1995) ............................31

United States v. Belflower, 390 F.3d 560 (8th Cir. 2004)............................25

United States v. Booker, 543 U.S. 220 (2005) ...............................................33

United States v. Charles, 531 F.3d 637 (8th Cir. 2008) .................................31

United States v. Christy, 888 F.Supp.2d 1107 (D. N.M. 2012) ....... 24, 25, 26

United States v. Corp, 668 F.3d 379 (6th Cir. 2012).............................. 23, 24

United States v. Coughlin, 500 F.3d 813 (8th Cir. 2007)..............................31

United States v. Crume, 422 F.3d 728 (8th Cir. 2005)...................................13

United States v. Diaz, 368 F.3d 991 (8th Cir. 2004) .....................................22

United States v. Gigante, 989 F.Supp. 436 (E.D. N.Y. 1998)......................30

United States v. Gocke, 507 F.2d 820 (8th Cir. 1974) ..................................13

United States v. Hall, 312 F.3d 1250 (11th Cir. 2002)..................................22

United States v. Hayward, 359 F.3d 631 (3rd Cir. 2004)..............................16

United States v. Hoey, 508 F.3d 687 (1st Cir. 2007) .....................................22

United States v. Johnson, 574 F.3d 570 (8th Cir. 2009) ...............................27

United States v. Johnston, 353 F.3d 617 (8th Cir. 2003) .................................9

United States v. Kimler, 335 F.3d 1132 (10th Cir. 2003) .............................22

United States v. Leonard, 494 F.2d 955 (D.C. Cir 1974)..............................14

iv

United States v. Live Oak, 377 F.3d 859 (8th Cir. 2004)................................20

United States v. McAllister, 225 F.3d 982 (8th Cir. 2000) ...........................14

United States v. McFarlin, 535 F.3d 808 (8th Cir. 2008)..............................30

United States v. Pappas, 715 F.3d 225 (8th Cir. 2013) ................................22

United States v. Pawlowski, 682 F.3d 205 (3rd Cir. 2012)...........................18

United States v. Serrano–Lopez, 366 F.3d 628 (8th Cir. 2004) ......................7

United States v. Shafer, 573 F.3d 267 (6th Cir. 2009) ........................... 18, 19

United States v. Shea, 493 Fed. Appx. 792 (7th Cir. 2012) ...........................18

United States v. Sirois, 87 F.3d 34 (2nd Cir. 1996).......................................19

United States v. Starr, 486 F.Supp.2d 940 (N.D. Iowa 2007).......... 16, 17, 25

United States v. Stokes, --- F.3d ---, 2014 WL 1673132 (8th Cir., April 29, 2014)..................................................................................20

United States v. Street, 531 F.3d 703 (8th Cir. 2008) ...................................22

United States v. Testerman, 446 F.Supp.2d 640 (W.D. Va. 2006) ..............30

United States v. Thundershield, 474 F.3d 503 (8th Cir. 2007) .............. 14, 21

United States v. VandeBrake, 679 F.3d 1030 (8th Cir. 2012) ....................27

United States v. Varner, 678 F.3d 653, 658 (8th Cir. 2012) ........................27

*Statutes*

18 U.S.C. § 2246(2)........................................................... 15, 16, 17

18 U.S.C. § 2246(3)........................................................... 17, 18, 21

18 U.S.C. § 2251 ............................................................... 19, 20

18 U.S.C. § 3553(a) .......................................................... 29, 33

v

*Rules*

Fed. R. Evid. 105 .................................................................. 12, 13

*U.S. Sentencing Guidelines*

§ 2G2.1(b)(4) ........................................................................ 23, 26

§ 5K2.0.................................................................................27

U.S.S.G. § 2G2.1(b)(2) ....................................................... 15, 20

U.S.S.G. § 2G2.1(b)(2)(A) ........................................ 14, 16, 17, 21

U.S.S.G. § 2G2.1(b)(4) .........................................................21

U.S.S.G. § 2G2.2(b)(4) .........................................................22

U.S.S.G. § 5H1.1 ...................................................................28

U.S.S.G. § 5H1.4 ...................................................................28

U.S.S.G. § 5K2.0(b).............................................................27

U.S.S.G. § 5K2.22(1) ............................................................28

U.S.S.G. § 5K2.22(2) ............................................................28

Appellate Case: 14-1337    Page: 7    Date Filed: 06/10/2014 Entry ID: 4163144

# JURISDICTIONAL STATEMENT

<u>Jurisdiction of the Court below</u>:  The trial court could hear Stong's case.  Title 18 U.S.C. § 3231 states "[T]he district court of the United States shall have original jurisdiction…of all offenses against the laws of the United States."

<u>Jurisdiction of this Court</u>:  This Court can hear Stong's appeal.  This appeal is from a final Judgment and Sentencing Order filed on February 3, 2014.  Title 28 U.S.C. § 1291 grants jurisdiction to "all final decisions of the district courts of the United States."  Stong timely filed his notice of appeal on February 10, 2014.

Appellate Case: 14-1337     Page: 8     Date Filed: 06/10/2014 Entry ID: 4163144

# STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

I.      THERE WAS INSUFFICIENT EVIDENCE TO SUSTAIN A CONVICTION FOR PRODUCTION AND POSSESSION OF CHILD PORNOGRAPHY.

> United States v. Serrano–Lopez, 366 F.3d 628, 634 (8th Cir. 2004)

II.     THE DISTRICT COURT SHOULD NOT HAVE ADMITTED THE VIDEO RECORDINGS.

> Federal Rule of Evidence 105

III.    THE DISTRICT COURT SHOULD NOT HAVE APPLIED AN ENHANCEMENT FOR OFFENSES INVOLVING A "SEXUAL ACT" OR "SEXUAL CONTACT."

> 18 U.S.C. § 2246(2) and (3)
> U.S.S.G. § 2G2.1(b)(2)(A)
> United States v. Starr, 486 F.Supp.2d 940 (N.D. Iowa 2007)

IV.    THE DISTRICT COURT SHOULD NOT HAVE ASSESSED AN ENHANCEMENT FOR MATERIAL PORTRAYING SADOMASOCHISTIC OR VIOLENT CONDUCT.

> U.S.S.G. § 2G2.1(b)(4)
> United States v. Corp, 668 F.3d 379 (6th Cir. 2012)

VI.    THE DISTRICT COURT SHOULD HAVE GRANTED A DOWNWARD DEPARTURE OR VARIANCE, AND THE SENTENCE WAS UNREASONABLE.

> 18 U.S.C. § 3553(a)
> U.S.S.G. § 5H1.1
> U.S.S.G. §5H1.4
> U.S.S.G. § 5K2.0(b) and (c)
> U.S.S.G. § 5K2.22(1) and (2)
> United States v. Coughlin, 500 F.3d 813, 818 (8th Cir. 2007)
> United States v. Booker, 543 U.S. 220 (2005)

Appellate Case: 14-1337    Page: 9    Date Filed: 06/10/2014 Entry ID: 4163144

## STATEMENT OF THE CASE

In June and July of 2012, Benton Stong ("Stong") was seventy-five years old and living alone in the tiny town of Oran, Iowa. (PSIR, page 2). [1] He had lived there for over two decades, having managed a dairy for eleven years before retirement. More recently he had done switch work for the municipal telephone company across the street from his downtown apartment, and he repaired and rebuilt home computers. Stong was well known in the town and counted many of the residents as friends. (PSIR 77). He has no living close relatives. (PSIR 74-75).

Stong suffers from a long list of serious health issues, including Type II diabetes, high blood pressure, peripheral edema, prostatitis, and chronic arthritis in his right shoulder, back, and knees. (PSIR 83). Stong must take numerous prescription medications, inject insulin and use a catheter to urinate. (PSIR 78-81). He uses a walker to get around. (PSIR 84).

Nevertheless, Stong had many social contacts. Among them was Renee B., a single mother who had known Stong for ten years. (TR 50). Renee spoke to Stong every day, and often depended on Stong for financial assistance,

_____

[1] In this brief, "DCD" refers to the District Court Clerk's Record and is followed by the docket number; "TR refers to the trial transcript, followed by a page number; FPTC refers to the final pretrial conference transcript, followed by the page number; "PSIR" refers to the Presentence Investigation Report and is followed by the paragraph number; "STR" refers to the sentencing transcript and is followed by the page number.

Appellate Case: 14-1337    Page: 10    Date Filed: 06/10/2014 Entry ID: 4163144

child care, and transportation. (TR 50, 63). He loaned her money, and sometimes paid her to clean his apartment. (TR 62). Renee's eleven-year-old son T.S. considered Stong an adopted grandfather. (TR 51). T.S. visited Stong in Oran once or twice a week, and stayed overnight several times. (TR 52). Stong took T.S. on outings to McDonalds, K-Mart, and a local state park. He bought things for T.S., such as food, clothing, shoes, eyeglasses, school supplies, and a swimming pass. (TR 54, 62). Over time, Stong met some of T.S.'s friends. He took them to a town celebration in nearby Fairbank, to municipal pools in Fairbank and Oelwein, and to the state park. (TR 78). He paid for clothing and food for them. (TR 78).

Kasi M., mother of K.M. age 10, met Stong through Renee. (TR 76). The women became good friends when Renee and T.S. moved from Oran to Oelwein at the beginning of the 2011-12 school year. (TR 77). Their sons, K.M and T.S., became very close. (TR 81). After school let out in May, Stong took the boys on outings and they stayed overnight. (TR 81). Other times K.M. stayed with Stong alone. (TR 77).

Z.K., age 12, and B.F., age 11, also were friends of T.S. In late Spring 2012 he brought Z.K. and B.F. to stay overnight too. (TR 76-77, 85-86). The boys helped Stong build computers, cleaned his apartment (to earn cash), and stayed up "really late" playing board games, internet games, and watching movies.

Appellate Case: 14-1337    Page: 11    Date Filed: 06/10/2014 Entry ID: 4163144

(TR 68-69). Their parents willingly allowed the boys to go, suspecting nothing. (TR 52, 77, 81, 83).

However, in early July 2012, the Fayette County (Iowa) Sheriff's Department was investigated Stong in suspicion of possession of child pornography. Law enforcement quickly requested and executed a search warrant at Stong's apartment. (TR 5, 173-174; PSIR 4). Among the items seized were numerous electronic devices, including two tower computers and a digital camera. (TR 15-16). Review of the hard drives of the computers revealed photographs of a pornographic nature of the four minor boys. (TR 37-40). Short video clips found on the camera's memory card depicted the boys masturbating, performing mutual oral sex on each other, and engaging in anal intercourse. (PSIR 7). Officers also found condoms, lubricants, and several sex toys in Stong's home. (PSIR 5). However, there was no evidence that Stong had ever touched T.S., K.M., Z.K., or B.F. in a sexual manner or distributed any of the photos or videos of the boys.

Stong was immediately taken into custody. He was charged in state court with three counts of Sexual Abuse in the Second Degree, and four counts of Sexual Exploitation of a Minor. Before the case could be brought to trial, all counts were dismissed in favor of federal charges. (PSIR 72).

On June 26, 2013, Stong was charged in the U.S. District Court for the Northern District of Iowa with one count of Sexual Exploitation of a Minor, in

Appellate Case: 14-1337    Page: 12    Date Filed: 06/10/2014 Entry ID: 4163144

violation of 18 U.S.C. §§ 2251(a) and 2251(e), and four counts of Possession of

Child Pornography, 18 U.S.C. §§ 2252A(a)(5)(B) and 2252A(b)(2). (DCD 2).

Stong was detained pending trial in his case. (DCD 7).

On August 30, 2013, Stong filed a Motion in Limine and brief asking

the Court to exclude certain items of evidence at trial. (DCD 21). The Court

granted Stong's motion. (DCD 28).

On September 15, 2013, Stong filed a supplemental Motion in

Limine, specifically asking that three photographs that the Government intended to

offer as exhibits at trial be excluded, unless the Court could determine as a matter

of law the images depicted "sexually explicit behavior." (DCD 30). The

Government resisted the Supplemental Motion in Limine. (DCD 31). After

reviewing Government Exhibits 22, 25, and 29, and hearing arguments of counsel,

the Court orally ruled the images depicted "sexually explicit behavior" as a matter

of law. (DCD 34).

Trial began on September 16, 2013 and lasted two days. The Hon.

Linda R. Reade, Chief Judge, presided and issued several evidentiary rulings

during trial. Stong was found guilty on all counts. (DCD 35).

On October 17, 2013, the U.S. Probation Office submitted its Draft

Presentence Investigation Report (PSIR). Having calculated a total offense level

Appellate Case: 14-1337    Page: 13    Date Filed: 06/10/2014 Entry ID: 4163144

of 43 and a criminal history category of I, the PSIR recommended an advisory guideline range of 1,320 months in prison. (PSIR 110).

Stong filed written objections to the Draft PSIR, which are addressed in the Final PSIR. (DCD 47). Some of the objections relate to factual assertions or conclusions made by the Probation Officer, while others challenged enhancements for the commission of a sexual act, providing pornography to minors, for having sadistic or masochistic images, and for being a custodian or babysitter of the minors at the time of the offenses. (DCD 47).[2] Stong argued his combined adjusted offense level should be 39, resulting in an advisory guideline range of 262-327 months in prison. (DCD 47).

On November 22, 2013, Stong filed a Sentencing Memorandum, again objecting the enhancements for various issues as addressed in the PSIR. (DCD 51). Stong also maintained his innocence of all charges, but in light of his conviction, provided alternate calculations for the sentencing guideline range. (DCD 51).

In addition, Stong moved for a below -guideline sentence based on U.S.S.G. § 5K2.0(b) and § 5K2.0(c) because mitigating circumstances were present to a substantial degree that made the case exceptional. Stong argued his advanced age (76) is a permissible circumstance for consideration of a downward

---

[2] Stong also objected to a distribution enhancement, which the United States declined to pursue at sentencing. (DCD 53).

Appellate Case: 14-1337    Page: 14    Date Filed: 06/10/2014 Entry ID: 4163144

departure pursuant to U.S.S.G. §§ 5H1.1 and 5K2.22(1).  Likewise, his very poor

physical health is a permissible ground for departure under U.S.S.G. §§ 5H1.4 and

5K2.22(2).  Stong requested a sentence of time served and home arrest with

electronic monitoring and VICAP.  (DCD 51).

   At sentencing on February 2, 2014, the District Court overruled

Stong's PSIR objections and refused a departure.  He was sentenced to 1,320

months, or *one hundred and ten years,* in prison, [3] and a lifetime term of

supervised release. (DCD 59).

   Stong filed his timely Notice of Appeal on February 10, 2014,

appealing both his conviction and sentence.  (DCD 61).


## SUMMARY OF THE ARGUMENT

   The evidence was insufficient to sustain a conviction on the charges

of production and possession of child pornography.  The trial court should not have

admitted video recordings over defense objections, or should have issued  limiting

instructions to guide the jury in the use of the recordings.

   At sentencing, the district court should not have applied an

enhancement for offenses involving a "sexual act" or "sexual contact," and should

not have applied an enhancement for sadomasochistic or violent material.  The

---

[3] 360 months for Count I and 240 months for each of Counts 2 through 5, all
consecutive.

6

court should have granted a downward departure or variance to a reasonable sentence.

## ARGUMENT

I. **THERE WAS INSUFFICIENT EVIDENCE TO SUSTAIN A CONVICTION FOR PRODUCTION AND POSSESSION OF CHILD PORNOGRAPHY.**

### A. Standard of review.

In reviewing the denial of a motion for a judgment of acquittal, the Court of Appeals reviews the sufficiency of the evidence de novo, evaluating the evidence in the light most favorable to the verdict and drawing all reasonable inferences in its favor. United States v. Serrano–Lopez, 366 F.3d 628, 634 (8th Cir. 2004).

### B. Argument.

After the United States concluded its presentation of evidence evidence and rested, the defense orally moved for judgment of acquittal. (DCD 35; TR 194-196). The District Court orally denied the motion. (DCD 35; TR 198). Stong asks this Court to review the evidence *de novo* and grant an acquittal on all counts.

The prosecution was required to prove that it was the *defendant* who used, persuaded, induced or enticed the minors to engage in sexually explicit conduct for the purpose of recording that conduct on camera. However, none of

7

the four boys depicted in the videos and photos testified at trial. A parent of one child testified and identified her son's voice on the subject videos. (TR 56). A law enforcement officer testified he recovered computers and other digital media devices from Stong's apartment. (TR 15-16). A second officer testified he found sexually explicit images of the boys on some of the computer hard drives and the camera's memory chip. (TR 135). However, there was absolutely no testimony that Stong was the camera operator, or that he even knew the videos or photos were being taken. No one testified that Stong appears visually in any of the videos or photos, although one parent testified she recognized Stong's voice on the videos. (TR 56). Without more, the most that can be said is the images were made in Stong's apartment, and that he was present at least some of the time. If the children were making the videos and taking the pictures as part of exploration and play, that is insufficient proof that Stong committed the crime of sexual exploitation of a minor.

With respect to the charges of possession of child pornography, the government is required to prove Stong knowingly possessed one or more images of child pornography, and knew that those images depicted minors engaging in sexually explicit conduct or the lascivious nudity. Stong does not suggest that he was not the owner or possessor of the computers, camera, and digital media items in his apartment. Rather, Stong argues that the government has failed to prove he

8

knew the images were in his possession. Even the metadata and the logs recovered in forensic analysis of the computers and other items cannot identify who was operating the camera, when the images were made, who transferred the images from camera to computer and when, or whether Stong actually knew those files were on his computers. There was no testimony indicating Stong saw the images after they were put on the computer. In fact, there was testimony that at least one of the boys was caught viewing pornography on computers at home, which raises an inference that he may have also done so at Stong's apartment.

Due to the government's failure of proof, this Court should vacate the conviction and dismiss the case.

## II. THE DISTRICT COURT SHOULD NOT HAVE ADMITTED THE VIDEO RECORDINGS.

### A. Standard of review.

The court of appeals reviews a district court's decision to admit evidence using an abuse of discretion standard. United States v. Johnston, 353 F.3d 617, 624 (8th Cir. 2003).

### B. Argument.

Early in the trial, the United States offered Government Exhibits 1, 2 and 3. (TR 30-32). These exhibits were DVDs, created by Investigator Joe Schmitz of the Iowa Internet Crimes Against Children Task Force, who investigated Stong's case and performed the forensic examinations of the

9

computers and other digital media recovered from Stong's apartment. Each DVD contained copies of video files recovered in the forensic examination. Exhibit 1 contained videos from a Western Digital hard drive found inside one of Stong's personal computers, and Exhibit 3 also came from the same PC. Exhibit 2 contained videos from a Seagate hard drive found inside a different PC. (TR 29-31).

The defense made a hearsay objection to the first two DVDs: "This witness [Investigator Schmitz] indicates he copied files onto these DVDs, but if the government intends to play those DVDs and identify anybody in those exhibits, then I think that there needs to be a hearsay objection lodged and dealt with." (TR 30). The prosecutor responded: "To the extent things are said [on the videos], they're not offered for the truth of the matter asserted, Your Honor." (TR 31). The specific purpose for which the exhibits were offered was never identified by the United States. The District Court overruled the objection and admitted Exhibits 1 and 2 (TR 31). When Exhibit 3 was offered, the defense again made a hearsay objection, which was overruled without discussion and the exhibit was received. (TR 32).

The next witness for the United States was Renee B., the mother of T.S. As predicted by the defense, the government played aloud in open court a portion of the audio from seven of the videos contained in Exhibits 1, 2 and 3.

10

After each clip was played, Renee B. was asked to identify the voice on the recording. She testified with respect to each clip that the voice was that of Benton Stong. (TR 55-58). Stong does not dispute her identification.

However, some of the clips communicated more than just the quality of Stong's voice – they suggested the content of the video. The defense objected again, and twice requested a limiting instruction be given, based upon the government's assertion that the exhibits were offered for purposes other than "the truth of the matter" (although the specific purpose was never identified on the record), but the Court deferred:

> MS. LAVERTY: Your Honor, I'm going to object, and ask the Court to make a limiting instruction. I understand that the government is offering this not for the truth of the matter.
> THE COURT: You may propose an instruction at the appropriate time.
> [To the prosecutor]You may proceed.
>       *     *     *
> MS. LAVERTY: Objection, same objection.
> THE COURT: I don't think there's any question it's not offered for the truth of the matter asserted. If you want a limiting instruction, you may put it in writing and submit it to the Court for consideration.

> (TR 56-57)

Portions of the same exhibits were again played for the jury on the second day of trial, this time with full audio and video, and Investigator Schmitz was asked to identify which computer the recording came from, and the date of the

11

recording if available. (TR 137-144). Finally, the recordings were played during the government's closing argument.[4]

If the videos were offered, as asserted by the government in the first instance, not for the truth of the matter asserted therein, but for some other undisclosed purpose, the district court should have given a limiting instruction telling the jury exactly for what purpose they could consider the evidence. Fed. R. Evid. 105. The second time the government attempted to play the material in open court, presumably to have a lay witness identify Stong's voice, defense counsel objected and specifically requested a limiting instruction. The court's demand for a written instruction was merely a diversionary tactic – having had many years of experience as a trial judge, the court surely knew how to give, and should have given, an impromptu limiting instruction.

Even the third time the government played the videos, it could have argued that it was doing so only to ask the witness to identify, if possible, the origin and date of the electronic file.[5] But in the end, the government clearly relied upon the entirety of the videos as primary evidence against the defendant on the crimes of production and possession of child pornography. We know this must be true, even without a transcript of closing arguments, because had the videos truly

---

[4] Counsel depends upon her sometimes unreliable memory that the videos were published to the jury again during closing arguments. A transcript of closings was not prepared because the district court did not approve CJA funds for it.

[5] Defendant did not object the third time.

Appellate Case: 14-1337     Page: 21     Date Filed: 06/10/2014 Entry ID: 4163144

been admitted for a limited purpose only, it would not have been necessary to replay them in summation.

Limiting instructions must be given, if requested, where evidence is admissible for one purpose, but not for another purpose. Fed. R. Evid. 105; Eighth Circuit Model Criminal Jury Instructions 2.00, introductory comment. Limiting instructions are not uncommon, and are useful and necessary to guide the jury in considering the proper scope of the evidence. See e.g. United States v. Crume, 422 F.3d 728, 730-31 (8th Cir. 2005) (probation officer's description of child pornography found on a computer disk in defendant's apartment was inadmissible; court instructed the jury to disregard that portion of officer's testimony); United States v. Gocke, 507 F.2d 820, 823 (8th Cir. 1974) (audio recording of discussion between accomplice and defendant contained profanity; no prejudice found because trial court cautioned the jury that this aspect of the recording was irrelevant and should be disregarded).

Where the failure to give a limiting instruction so affects the trial that the proceedings become unfair to the defendant, a reversal is required. Evans v. Cowan, 506 F.2d 1248, 1249 (6th Cir. 1974) (jury was never instructed on permissible uses of evidence of defendant's previous convictions; trial court had a duty to give a limiting instruction even if defendant had not requested one, because the "possibility of egregious unfairness was so great in the absence of a limiting

13

instruction that the failure to give one" was clear error); <u>United States v. Leonard</u>, 494 F.2d 955, 965 (D.C. Cir 1974) (failure to give immediate limiting instruction concerning admissibility of impeachment testimony was plain error requiring reversal, even though general instruction on impeachment evidence was given in very long charge at the end of the trial).

Here, the prejudice to Stong is clear: the government offered the videos for one purpose, but ultimately they became the primary incriminating evidence against him. The Court's denial of the defense objection, and refusal to give a limiting instruction, is plain error requiring reversal.

## III.    THE DISTRICT COURT SHOULD NOT HAVE APPLIED AN ENHANCEMENT FOR OFFENSES INVOLVING A "SEXUAL ACT" OR "SEXUAL CONTACT."

### A.    Standard of review.

An issue requiring statutory interpretation is a question of law requiring de novo review. <u>United States v. McAllister</u>, 225 F.3d 982 (8th Cir. 2000). However, the Court of Appeals reviews the district court's construction and application of the Sentencing Guidelines de novo, and factual findings for clear error. <u>United States v. Thundershield</u>, 474 F.3d 503 (8th Cir. 2007).

### B.    Argument.

This issue is one of first impression in the Eighth Circuit.

At paragraphs 20, 30, 40, and 48 of the PSIR, the Probation Office recommended a two-level enhancement pursuant to U.S.S.G. § 2G2.1(b)(2)(A) for

14

"the commission of a sexual act or sexual contact" during the offense. Stong objected, but the District Court overruled the objection and assessed Stong with the enhancement with respect to all four victims. (STR 26-28).6

1. Commission of a Sexual Act.

In the context of child pornography cases, the phrase "sexual act" does not mean the same thing as "sexual contact." For purposes of U.S.S.G. § 2G2.1(b)(2), the term "commission of a sexual act" has the meaning given in 18 U.S.C. § 2246(2). That section defines it as genital-genital, genital-oral, or anal-oral physical contact (subsections A and B); penetration of anus or genital opening "with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person," (subsection (C)); or the "intentional touching, not through the clothing, of the genitalia of another person who has not attained the age of 16 years with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person," (subsection (D)).[7]

---

[6] No instruction or interrogatory was given to the jury to determine whether there was a "sexual act" or "sexual contact" with respect to any of the victims. The PSIR suggested in paragraph 20 that there was evidence to support both definitions. At sentencing, the District Court did not specify which alternative was applied in its approval of the enhancement with respect to each of the four victims. "2-level increase because the offense involved the commission of a sex act or a sexual contact." (STR 26).

[7] Clearly, subsections A, B, and D require at least two participants. Subsection C could be interpreted to include self-touching.

15

There was no evidence produced at trial or sentencing that suggested Stong ever touched any of the boys in a sexual manner. The PSIR recommended, and the United States argued, that the enhancement should apply in this case for vicarious sexual acts. The government maintains that Stong videotaped T.S. and K.M. as they engaged in oral and anal sex with each other, and that he also videotaped each of the four boys masturbating. For purposes of applying the definition of "sexual act," the recordings must be analyzed separately.

The government argues that a "sexual act" was committed by T.S. and K.M. engaging in oral and anal intercourse, and that by recording each of those acts, Stong's offense "involved" the "commission of a sexual act" within the meaning of U.S.S.G. § 2G2.1(b)(2)(A). However, other courts have ruled, in different contexts interpreting 18 U.S.C. § 2246(2), that §2246(2) requires physical contact between the defendant and another person. See e.g., United States v. Hayward, 359 F.3d 631, 640 (3rd Cir. 2004) (remarking that §2246(2) is "plain and explicit: [it] require[s] actual touching, a meeting of body surfaces"); United States v. Starr, 486 F.Supp.2d 940, 947 (N.D. Iowa 2007) (Congress's use of the phrase "of another" in the definition of "sexual act" limited the conduct that could be considered a "sexual act" to conduct involving "some physical contact between the defendant and another person").

Appellate Case: 14-1337    Page: 25    Date Filed: 06/10/2014 Entry ID: 4163144

Alternatively, the government argues that a "sexual act" was committed when Stong recorded each of the boys self-masturbating. However, the District Court ignored its own precedent from the 2007 Starr decision, in which it determined that a self-masturbation is not a "sexual act" for purposes of the enhancement. Id. at 947. In that case, Starr persuaded a minor female to masturbate on camera, and then send him the videotape; Starr was not present when the victim made the recording. Following a parsing of § 2246(2), the court found itself "obliged to apply the plain language of the statute" even though its construction of that section "does not accord with the commonsense definition of 'sexual act.'" Id. "It is within Congress's prerogative to advise harsher sentences upon child pornographers who have physical sexual contact with their victims." Id.

Therefore, the District Court's application of the enhancement for "commission of a sexual act" pursuant to U.S.S.G. §2G2.1(b)(2)(A) was in error.

2. Sexual Contact.

If the offense did not involve a "sexual act," then for the enhancement to apply, the offense must have involved "sexual contact" in some form. The term "sexual contact" is defined in 18 U.S.C. § 2246(3) as the "intentional touching" of various parts of the body "of any person" with the intent "to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person." The question

17

then becomes: if self-masturbation does not qualify as a "sexual act" because it does not involve touching of another person, can it nevertheless be "sexual contact" because 18 U.S.C. § 2246(3) refers to the touching of "any person"?

This Court has not had an opportunity to rule on this issue. Other Courts of Appeal considering the breadth of the definition in § 2246(3) have ruled in favor of applying the enhancement. United States v. Aldrich, 566 F.3d 976 (11th Cir. 2009) (defendant masturbated for a minor female over webcam); United States v. Shafer, 573 F.3d 267 (6th Cir. 2009) (same); United States v. Pawlowski, 682 F.3d 205 (3rd Cir. 2012) (defendant filmed child victim masturbating); United States v. Shea, 493 Fed. Appx. 792 (7th Cir. 2012) (unpublished; defendant coerced female teens to touch themselves "sexually and sadistically" on webcam for his viewing pleasure).

In Shafer, the court went on to discuss the clause in § 2246(3) that requires there to have been "intentional touching … of the genitalia" of the victim by the victim. The court reasoned that "the coerced self-masturbation by a minor child is a form of sexual abuse of another." Shafer at 273. In such "rare" situations, the court should look to the intent of the defendant, not the victim. Id. at 278. Thus, the touching of the victim's genitalia by the victim, with an intent to arouse or gratify the sexual desire of either the victim or the defendant, satisfied

18

the definition because the defendant caused the victim to touch himself in a sexual manner.  Id. at 277.

Stong suggests that these decisions should be distinguished.  First, Stong argues that there was no evidence that he "caused" the boys to touch themselves.  None of the children testified at Stong's trial.  Parents and police officers who testified were not present when the recordings were made and were unable to opine about the circumstances surrounding their creation.  Nor could the officer who examined Stong's electronic media say who operated the camera, who transferred the files from camera to computer, if the files were ever copied from another location, or if they were deleted, when or who deleted them. (TR 157-159).  He could not even say for sure when the files were created.  (TR 161).

It is possible to violate 18 U.S.C. § 2251 by merely "using" children as the subject of pornography, without coercion.  See e.g. United States v. Sirois, 87 F.3d 34, 41-42 (2nd Cir. 1996) ("a person 'uses' a minor to produce child pornography if the minor serves as the subject of photography"; it requires less than active encouragement or provocation, but rather means "to avail oneself of" the subject).  The jury was not asked to decide exactly how Stong "used" the children to make pornographic images.  If he actively coerced or commanded their activities so that he could film them, then the enhancement would be proper.  However, if he observed their behavior in progress and merely turned on a camera,

19

then he could have violated 18 U.S.C. § 2251 but would not have "caused" the sexual contact for purposes of the § 2G2.1(b)(2) enhancement.

The district court cannot rely on the PSIR as evidence if a timely objection was made. United States v. Live Oak, 377 F.3d 859, 866 (8th Cir. 2004).The district court's failure to determine this factual issue, and simply assuming the enhancement should be applied, is error. See United States v. Stokes, --- F.3d ---, 2014 WL 1673132 (8th Cir., April 29, 2014) (PSIR contained no factual allegation defendant sold drugs for ten years; nevertheless the government and the court stated opinions that defendant was "probably" selling drugs over the last decade because he was unemployed in that time; plain error required reversal).

Stong also strongly objected to statements in the PSIR that he "coerced and bribed the four local boys to undress so that he could photograph and video record them while they were nude," (PSIR 10), and asserted that "it was always the boys' idea to undress, and that he never coerced, threatened nor bribed them." (DCD 49). The PSIR only refers generally to information "in the government's discovery file" as evidence supporting the enhancement. At sentencing, the court acknowledged that the government had the burden of proof on this issue, (STR 14), but the prosecution introduced no testimony or other evidence in support of the enhancement. (STR 14). In any case, a film depicting

20

the children in the nude would not satisfy the definition of "sexual content" under 18 U.S.C. § 2246(3).

For these reasons, this Court should reverse the sentence with directions to the district court to not apply an enhancement pursuant to U.S.S.G. § 2G2.1(b)(2)(A).

## IV.   THE DISTRICT COURT SHOULD NOT HAVE ASSESSED AN ENHANCEMENT FOR MATERIAL PORTRAYING SADOMASOCHISTIC OR VIOLENT CONDUCT.

### A.   Standard of review.

The Court of appeals reviews the district court's construction and application of the Sentencing Guidelines de novo, and factual findings for clear error.  United States v. Thundershield, 474 F.3d 503 (8th Cir. 2007).

### B.   Argument.

When making a sentencing guideline calculation in a case involving production of child pornography, the District Court must determine whether a four-level enhancement for depictions of sadistic, masochistic, or other violent conduct should be applied pursuant to U.S.S.G. § 2G2.1(b)(4).  The Circuit Courts of Appeal vary in their approach to the enhancement.  In particular, the Eighth Circuit has taken a very broad and inclusive view of application of the guideline.

The federal child pornography sentencing guidelines were substantially revised in 2004.  Amendment 664 added the sadomasochistic enhancement to U.S.S.G. § 2G2.1(b)(4).  A similar enhancement already was in

21

place for cases involving distribution of child pornography.  U.S.S.G.
§ 2G2.2(b)(4).

The terms "sadistic," "masochistic," and "other depictions of
violence" are not defined in the Guidelines.  However, the facts of some cases
unquestionably fit the common-sense meaning of those terms.  See, e.g., United
States v. Pappas, 715 F.3d 225 (8th Cir. 2013) (video depicted child penetrated
vaginally and anally with a penis and a dildo; district court found it "particularly
distressing to hear the child ask the defendant to stop, that she is being hurt");
United States v. Street, 531 F.3d 703 (8th Cir. 2008) (adult male performing anal
sex on minor boy is per se sadistic or violent), citing United States v. Diaz, 368
F.3d 991, 992 (8th Cir. 2004) ("images involving ... an adult male performing anal
sex on a minor girl ... are per se sadistic or violent").

These decisions follow the same rationale as the rulings in United
States v. Hoey, 508 F.3d 687 (1st Cir. 2007), United States v. Caro, 309 F.3d 1348
(11th Cir. 2002), United States v. Kimler, 335 F.3d 1132 (10th Cir. 2003), United
States v. Hall, 312 F.3d 1250 (11th Cir. 2002), and others: that the vaginal or anal
penetration of a young child by an adult male penis would necessarily have to be
painful due to the difference in their size, so the enhancement should apply even if
one is unable to determine from the images that the victim actually experienced
pain during the encounter.

Appellate Case: 14-1337     Page: 31     Date Filed: 06/10/2014 Entry ID: 4163144

In <u>United States v. Corp</u>, 668 F.3d 379 (6th Cir. 2012) the Court of Appeals attempted to place logical limits on the use of the enhancement. Mr. Corp, an adult male, engaged in sexual intercourse and other sexual contact with a fifteen-year-old girl he met on the internet. He took various photos of their encounter, including some of the victim with Corp's penis in her mouth, and others showing her face after Corp had ejaculated on it. The victim testified that Corp also urinated in her mouth, but there were no photos of that conduct. The district court relied exclusively on the undocumented urination act to support a § 2G2.1(b)(4) enhancement. The Court of Appeals reversed, concluding that, despite its disturbing nature, the undepicted act of urination was irrelevant to the application of the enhancement.

Referring to the dictionary definitions again, the Court recognized that the phrase "other depictions of violence" incorporates, but does not extend beyond, the more specific terms "sadistic" and "masochistic." <u>Id.</u> 668 F.3d at 389. Since a particular image can be objectively classified as portraying sadistic or masochistic conduct, the same approach should be used for allegedly violent conduct:

> *In other words, whether an adult in the image is in fact intending to inflict physical or mental pain and whether the minor in fact experiences such pain are immaterial. Rather, the court must determine, based on the contents within the four corners of the image, whether the circumstances being portrayed are such that an outsider would perceive them as depicting the infliction of pain or humiliation on the minor. In sum, we hold that in order to apply the §2G2.1(b)(4) enhancement, a sentencing court must determine by a preponderance of the evidence that an image or material (1) depicts*

23

*sexual activity involving a minor and (2) portrays conduct that would cause an objective viewer to believe – without regard to the undepicted circumstances of the sexual encounter – that the pictured activity is inflicting physical pain, emotional suffering, or humiliation on that minor.*

<u>Corp</u>, 668 F.3d at 389-90.

Thus, images showing the sexual penetration of prepubescent children depict behavior that is "inherently sadistic," because – objectively - such an act is likely to cause pain in the very young victim. But where, as in <u>Corp</u>, the images do not depict a prepubescent child, or the victim's expression does not seem to convey what could objectively be perceived as a manifestation of humiliation or disgust, the case is much closer. The Court of Appeals remanded the matter to the district court to determine what was depicted in Corp's photos, and whether the depicted acts fit the newly-clarified definition.

A similar limitation was recognized in <u>United States v. Christy</u>, 888 F.Supp.2d 1107 (D. N.M. 2012), which involved an image depicting a prepubescent girl with adult male genitalia in her mouth. The Court found that there was nothing humiliating about the photograph, and the expression on the child's face did not support a finding the image was sadistic or masochistic. "The Court does not believe that the depiction is one 'intended to portray the infliction of pain and humiliation on very young minor victims as a means of giving sexual gratification to individuals with pedophilic tendencies.' [citation omitted] If the

24

Court were to hold otherwise, virtually all child pornography would support a 4-level enhancement." Id. 888 F.Supp.2d at 1150-51.

However, the Eighth Circuit takes the standard farther. In United States v. Starr, 533 F.3d 985, 1002 (8th Cir. 2008), the Court of Appeals determined that self-penetration with a foreign object was categorically sadistic, even if the victim was a fully-grown seventeen-year-old female, and no actual pain or injury was suffered by her or indicated in her expression. In United States v. Belflower, 390 F.3d 560, 562 (8th Cir. 2004), the Court of Appeals held that even images depicting an adult male attempting sexual penetration of a young child automatically qualify as "sadistic" or "violent" for purposes of the enhancement.

In the instant case, the Probation Office recommended application of the enhancement based upon a video depicting T.S. and K.M. engaged in anal sex. (PSIR 22, 32). Stong objected (DCD 49), but the government presented no evidence in support of the enhancement at sentencing. Nevertheless, the district court summarily ruled – without comment – that "all of the guidelines are correctly computed, and the Court finds that the objection [sic] should be overruled." (STC 26).

The video of T.S. and K.M. speaks for itself. The boys are verbally interacting as they engage in the experience, and it is evident the encounter is

Appellate Case: 14-1337     Page: 34     Date Filed: 06/10/2014 Entry ID: 4163144

consensual. No violence or force is involved. The boys are of similar physical size. Gay men and teens engage in the very same activity as sexual expression.

We are left, then, with only two logical possibilities justifying the application of the enhancement when an item of child pornography depicts anal intercourse between two adolescent boys of similar size and age: the image is distasteful and therefore labeled deviant because of its homosexual content, or the enhancement is proper because the defendant "used" or directed the children somehow to engage in the particular sexual interaction. The former excuse is simply homophobic and legally unsupportable. The latter merely restates the same facts leading to the conviction, and fails to distinguish this case as involving violent, egregious behavior that should be punished more severely than other child pornography cases.

This Court must recognize a limit to the application of the § 2G2.1(b)(4) enhancement where no actual injury or violence is depicted. Stong suggests that the better approach is the one that requires an objective assessment of what is *actually depicted* in the image, not just a prudish reaction to relatively normal behavior. Otherwise, "virtually all child pornography would support a 4-level enhancement." Christy, 888 F.Supp.2d at 1151. Stong respectfully requests this Court reverse and remand for resentencing.

## V. THE DISTRICT COURT SHOULD HAVE GRANTED A DOWNWARD DEPARTURE OR VARIANCE, AND THE SENTENCE WAS UNREASONABLE.

### A. Standard of review.

The Court of Appeals generally will not review the district court's refusal to grant a downward departure unless there was an unconstitutional motive or the sentencing court thought it did not have authority to grant the departure. United States v. Varner, 678 F.3d 653, 658 (8th Cir. 2012).

The Court of Appeals reviews the substantive unreasonableness of sentences under a standard akin to abuse of discretion, cognizant that it will be unusual to reverse a district court's sentence as substantively unreasonable. United States v. VandeBrake, 679 F.3d 1030, 1037 (8th Cir. 2012). However, the Eighth Circuit will reverse if the district court abused its discretion. United States v. Johnson, 574 F.3d 570, 572 (8th Cir. 2009).

### B. Argument.

United States Sentencing Guideline § 5K2.0(b) permits a below-guidelines sentence if the court finds that a mitigating circumstance of a kind, or to a degree, that has been specifically permitted in the guidelines; was not adequately taken into consideration by the Sentencing Commission; and should result in a sentence different from the advisory range. Pursuant to subsection "c" of § 5K2.0, the court may depart based on a combination of two or more circumstances or offender characteristics if each is present to a "substantial degree" and is a

27

permissible ground for departure under the guidelines, and the combination of circumstances or characteristics makes the case "exceptional."

Ben Stong's age (76 years old at the time of sentencing) is a circumstance suggesting departure in this case. Guidelines §§ 5H1.1 and 5K2.22(1) identify age as a reason to depart downward "in a case in which the defendant is elderly and infirm and where a form of punishment such as home confinement might be equally efficient as and less costly than incarceration."

Likewise, Stong's very poor physical health is a permissible ground for departure. U.S.S.G. §§ 5H1.4 and 5K2.22(2). The same considerations suggest an alternative to incarceration where it would be cheaper and just as "efficient."

The PSIR documented Stong's poor health at Paragraphs 78 to 86. He suffers from hypertension, arrhythmia, prostatitis, insulin-dependent diabetes, and near-debilitating osteoarthritis in his knees and shoulder. He relies upon many daily medications, a walker, and custom orthopedic shoes. He suffers from constant, severe pain due to arthritis, and takes pain relievers several times a day when permitted. The Court had the opportunity during trial to observe some of Stong's physical limitations.

The extraordinarily long sentences recommended under the child pornography guidelines clearly are designed to harshly punish offenders and keep

Appellate Case: 14-1337   Page: 37   Date Filed: 06/10/2014 Entry ID: 4163144

them out of society for long periods of time.  While this is a noble goal, an exception should be made in this case.

The Social Security Administration's Period Life Expectancy Table for 2013 reports that a male who was age 65 at the beginning of 2002 will have a predicted remaining lifespan of 16.2 years from 2002, or sometime in 2018.[8] Given Stong's very poor health, it's likely to be much less.

The cost of incarcerating Mr. Stong is likely to far exceed the average of about $29,000 per year in a BOP facility.  Community supervision costs only about $3,350 per year, plus the expense of a GPS or VICAP device.

A sentence of time served and home confinement with electronic monitoring by GPS and/or VICAP would best serve the purposes enumerated in 18 U.S.C. § 3553(a).  The past incarceration, while minimal compared to most child pornography sentences, adequately addressed the nature and circumstances of the offense while taking into account Stong's advanced age and infirmity.  Stong could monitor his health conditions and treat them at his own expense.  He is well known in his small town (Oran, population about 100), and as such is unlikely to come into contact with children.  Monitoring by GPS would permit the supervising probation officer the ability to ensure Stong stays away from the victims and areas where children congregate.  A VICAP monitor would help ensure Stong remains

---

[8] http://www.socialsecurity.gov/oact/tr/2013/lr5a3.html#foot1

Appellate Case: 14-1337     Page: 38     Date Filed: 06/10/2014 Entry ID: 4163144

sober. He could continue to tinker on computers at home, provided they are monitored by software and a probation officer, and he performs occasional contract work for the phone company across the road from his home. Income from this endeavor, plus his social security retirement income, could be applied to potential restitution obligations. He could also be required to perform community service, such as answering telephones or maintaining a website for a church or community center.

While rare, departures for advanced age and physical condition have been granted to defendants with similar physical limitations. See e.g. <u>United States v. McFarlin</u>, 535 F.3d 808 (8th Cir. 2008) (56-year-old drug crime defendant had undergone multiple heart surgeries, suffered from severe coronary artery disease, severe peripheral vascular disease, asthma, PTSD, anxiety, depression, obesity, sleep apnea, hypertension, gout, diabetes, nerve root disease, bronchitis, and was taking 11 prescription drugs; departure from guideline range of 78-97 months in prison to three years' probation was affirmed); <u>United States v. Testerman</u>, 446 F.Supp.2d 640 (W.D. Va. 2006) (departure from guideline range of 27-33 months down to probation and home detention, which would adequately deter him based on his advanced age, previous law-abiding life, and other facts); <u>United States v. Gigante</u>, 989 F.Supp. 436 (E.D. N.Y. 1998) (69-year-old former Mafia boss's fragile health, and court's duty not to impose excessively cruel sentences, justified

30

Appellate Case: 14-1337    Page: 39    Date Filed: 06/10/2014 Entry ID: 4163144

departure from 262 to 144 months; court cited varied sources including Richard Posner, William Shakespeare (*As You Like It*, Act II, scene vii. "Of wanton youth, repents a painful age …"), The Code of Maimonides, and the Book of Deuteronomy as support for considering age and frailty as mitigating sentencing factors); United States v. Baron, 914 F.Supp. 660 (D. Mass 1995) (76-year-old cancer and cardiac patient granted departure, where his medical condition was unstable and imprisonment could trigger physiological reaction that could be difficult to control, and home detention was less expensive and more efficient than incarceration).

This Court established a three-part analysis to determine if a defendant's physical condition is sufficient to warrant a reduction in his sentence, in United States v. Coughlin, 500 F.3d 813, 818 (8th Cir. 2007).  First, the sentencing court should decide whether the defendant's physical condition so poor that he would find imprisonment more than the normal hardship.  Second, the court should examine whether imprisonment would subject him to more than the normal inconvenience or danger, in particular, whether it would worsen his condition or remove special care he can only get "on the outside."  Finally, the court should consider whether the defendant's physical condition has any substantial present effect on his ability to function.  Id.; see also United States v. Charles, 531 F.3d 637 (8th Cir. 2008) (quoting Coughlin).

Appellate Case: 14-1337    Page: 40    Date Filed: 06/10/2014 Entry ID: 4163144

In the instant case, the probation office obtained some of Stong's medical records, and verified that he has a history of insulin-dependent diabetes, gastritis, peripheral edema, hypertension, chest pain, benign prostatic hyperplasia, benign prostatic hypertrophy, and osteoarthritis. He takes several medications and injects insulin to control his blood sugar. He has extreme arthritis pain in his knees and shoulder that greatly curtail his mobility. (PSIR 78-86). He is essentially a prisoner in his own body.

Incarceration will be especially difficult for Stong. At the time of sentencing, Stong had been in custody in a county jail for approximately 18 months, nearly all of it in isolation. He was not permitted to wear standard prisoner garb, but must wear a stiff padded suicide dress, partially open in the back, and no underwear. His medical issues were being monitored by local health care providers in West Union and/or Oelwein, many of whom had treated him before he was arrested in 2012. It is unknown how well those issues can be managed by the Bureau of Prisons.

These facts were uncontroverted by the government. All satisfy the three-part analysis and weigh in favor of a departure.

There were no victim impact statements calling for a life sentence, and no claims for restitution. Nevertheless, the government argued that Stong

Appellate Case: 14-1337    Page: 41    Date Filed: 06/10/2014 Entry ID: 4163144

should not be granted a departure because he would be a "continuing risk to children."  (DCD 52, p. 9).

Without acknowledgement of Stong's health conditions, the district court summarily agreed, referring to the health issues only briefly: "His health conditions have not deterred him from victimizing children.  His age and health situation do not outweigh the aggravating factors…" (STR 38, 39-40).

A sentencing court is required to impose a sentence which is "sufficient, but not greater than necessary" to satisfy the statutory goals of sentencing.  18 U.S.C. § 3553(a).  The court must consider the guidelines range, but may vary from the range to "tailor the sentence in light of other statutory concerns" of § 3553(a).  United States v. Booker, 543 U.S. 220 (2005).

Here, although the evidence presented and argued in support of a departure and variance was clear and uncontroverted, the district court appeared to be unable to distinguish this case from the "heartland," not because Stong's case is ordinary, but because in the court's view, there is no "heartland": "When people … argue this is not a typical sex offender because he doesn't have a criminal history or he's older or he has a job or this or that, my response is always the same: and that is, there is no typical sex offender."  (STR 38).  In so doing, the court impermissibly refused and failed to adequately consider the exceptional circumstances that clearly called for a departure and/or variance in this case.

33

Stong's sentence of *one hundred and ten years*, standing alone, is unreasonable.

But for an elderly and infirm defendant, it also is unconscionable.

## **CONCLUSION**

The Court of Appeals should vacate the conviction and dismiss this

case. Alternatively, the Court should reverse the sentence and remand.


Respectfully submitted,

Anne M. Laverty
MULLIN & LAVERTY, LC
1636 42nd Street NE
Cedar Rapids, IA 52402
Phone: (319) 395-9191
Fax: (319) 395-9192
E-Mail: alaverty@mullinlaverty.com

By: _____
     Anne M. Laverty
     Attorneys for Appellant
     Benton Stong

Appellate Case: 14-1337     Page: 43     Date Filed: 06/10/2014 Entry ID: 4163144

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with: Fed. R. App. P. 32(a)(7)(B) because it contains 8,013 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii); Fed. R. App. P. 32(a)(5) and (6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14 pt. Times New Roman font; and 8th Cir. R. 28A(d) because the PDF version of the file has been scanned for viruses using Trend Micro and is believed to be virus-free.

  /s/ Anne M. Laverty_____
Anne M. Laverty


## ATTORNEY COST CERTIFICATE

I hereby certify that the actual cost of copying the foregoing Brief of Appellant in Case No. 14-1337, United States of America v. Benton  Stong, was the sum of $_____ (exclusive of delivery and postage).

  /s/ Anne M. Laverty_____
Anne M. Laverty


## CERTIFICATE OF SERVICE

I hereby certify that on the 9th day of June, 2014, I electronically filed the foregoing with the Clerk of Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system.  I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

  /s/ Anne M. Laverty_____
Anne M. Laverty

Appellate Case: 14-1337   Page: 44   Date Filed: 06/10/2014 Entry ID: 4163144