No. 14-1337

# IN THE UNITED STATES COURT OF APPEALS FOR THE EIGHTH CIRCUIT

UNITED STATES OF AMERICA,

Appellee,

vs.

BENTON STONG,

Appellant.

*Appeal from the United States District Court*
*For the Northern District of Iowa*
*Honorable Linda R. Reade, Chief Judge*

## BRIEF OF APPELLEE

Mark Tremmel
Assistant United States Attorney
Northern District of Iowa
111 Seventh Avenue SE, Box 1
Cedar Rapids, IA  52401
(319) 363-6333
(319) 363-1990 (fax)
Mark.Tremmel@usdoj.gov

## SUMMARY OF THE CASE

A jury convicted defendant Benton Stong of one count of sexual exploitation of children and four counts of possession of child pornography after having previously been convicted of an offense relating to aggravated sexual abuse, sexual abuse, or abusive sexual conduct involving a minor. The district court sentenced defendant to 110 years' imprisonment. Defendant appeals his convictions and sentence.

Defendant argues the evidence was insufficient to sustain his convictions. He also contends the court erred in overruling his hearsay objections to videos admitted into evidence and in its handling of his request for a limiting instruction.

Defendant argues the court erred at sentencing when it applied enhancements based on the offense's involving the commission of a sexual act or sexual contact and based on the offense's involving material portraying sadistic or masochistic conduct. Further, he argues that the court should have granted his motions for downward departure or variance and that his sentence was substantively unreasonable.

If oral argument is granted, ten minutes would be sufficient.

Appellate Case: 14-1337    Page: 2    Date Filed: 07/01/2014 Entry ID: 4170974

# TABLE OF CONTENTS

**Page**

SUMMARY OF THE CASE .......................................................................ii

TABLE OF CONTENTS ....................................................................... iii

TABLE OF AUTHORITIES.....................................................................vi

JURISDICTIONAL STATEMENT ...........................................................1

STATEMENT OF THE ISSUES...............................................................1

STATEMENT OF THE CASE ..................................................................2

    Relevant Procedural History.............................................................2

    Rulings Presented for Review ...........................................................6

    Statement of the Facts .....................................................................7

SUMMARY OF THE ARGUMENT .......................................................22

ARGUMENT ......................................................................................23

I.    The District Court Did Not Err in Denying Defendant's
    Motion for Judgment of Acquittal..................................................23

      A.    Standard of Review ............................................................23

      B.    The Evidence at Trial Supported the Jury's Verdicts..........24

II.    The District Court Did Not Err in Overruling Defendant's
    Hearsay Objections to the Admission of Videos into Evidence
    at Trial or in its Handling of Defendant's General Request
    for a Limiting Instruction ...............................................................30

Appellate Case: 14-1337    Page: 3    Date Filed: 07/01/2014 Entry ID: 4170974

    A.    Standard of Review ............................................................... 31

    B.    The District Court Properly Overruled Defendant's
            Hearsay Objections and Properly Handled Defendant's
            General Request for a Limiting Instruction ........................ 32

    C.    Any Error in Overruling Defendant's Hearsay
            Objections or in Handling Defendant's Request for a
            Limiting Instruction Was Harmless ..................................... 38

III.   The District Court Did Not Err in Calculating the Guidelines
       or in Denying Defendant's Motions for Downward Departure
       and Variance, and the Court Did Not Abuse Its Discretion in
       Imposing a Substantively Reasonable Sentence .......................... 38

    A.    Standard of Review ............................................................... 39

    B.    The District Court Did Not Err in Applying the
            Two-Level Enhancement Under USSG §2G2.1(b)(2)(A)
            Because the Offense Involved a Sexual Act or Sexual
            Contact ................................................................................. 41

    C.    The District Court Did Not Err in Applying the
            Four-Level Enhancement Under USSG §2G2.1(b)(4)
            Because the Offense Involved Material Portraying
            Sadistic or Masochistic Conduct ......................................... 45

    D.    Any Error in the Court's Guidelines Rulings Was
            Harmless ............................................................................... 47

    E.    The District Court Did Not Err in Denying Defendant's
            Motions for Downward Departure and Variance, and
            the Court Did Not Abuse Its Discretion in Considering
            the Factors Under 18 U.S.C. § 3553(a) and in Imposing
            a Substantively Reasonable Sentence .................................. 49

CONCLUSION ...................................................................................... 54

Appellate Case: 14-1337    Page: 4    Date Filed: 07/01/2014   Entry ID: 4170974

CERTIFICATE OF FILING AND SERVICE .......................................55

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS.......................................................56

Appellate Case: 14-1337     Page: 5     Date Filed: 07/01/2014 Entry ID: 4170974

# TABLE OF AUTHORITIES

**Cases:**                                                                    **Page**

*Carlisle v. United States*, 517 U.S. 416 (1996).........................................23

*Caviness v. Nucor Yamato Steel Co.*, 105 F.3d 1216 (8th Cir. 1997) .....31

*Gall v. United States*, 552 U.S. 38 (2007) .........................................40, 52

*United States v. Bauer*, 626 F.3d 1004 (8th Cir. 2010)...........................50

*United States v. Burman*, 666 F.3d 1113 (8th Cir. 2012).......................39

*United States v. Carter*, 410 F.3d 1017 (8th Cir. 2005).........................31

*United States v. Clay*, 618 F.3d 946 (8th Cir. 2010)...............................24

*United States v. Davis*, 583 F.3d 1081 (8th Cir. 2009) ................40, 48-49

*United States v. DeMarce*, 564 F.3d 989 (8th Cir. 2009) ..............1, 32, 38

*United States v. Diaz*, 368 F.3d 991 (8th Cir. 2004).......................1, 46-47

*United States v. Erdman*, 953 F.2d 387 (8th Cir. 1992).........................24

*United States v. Farmer*, 647 F.3d 1175 (8th Cir. 2011) ........................40

*United States v. Feemster*, 572 F.3d 455 (8th Cir. 2009).........1, 40-41, 53

*United States v. Goodale*, 738 F.3d 917 (8th Cir. 2013) ....................1, 23

*United States v. Gregoire*, 638 F.3d 962 (8th Cir. 2011).........................23

*United States v. Hayward*, 359 F.3d 631 (3d Cir. 2004).........................43

*United States v. Huntley*, 523 F.3d 874(8th Cir. 2008) ..........................23

Appellate Case: 14-1337    Page: 6    Date Filed: 07/01/2014 Entry ID: 4170974

*United States v. Idriss*, 436 F.3d 946 (8th Cir. 2006)..............................39

*United States v. Johnson*, 450 F.3d 366 (8th Cir. 2006)........................31

*United States v. Keating*, 579 F.3d 891 (8th Cir. 2009)........................52

*United States v. Lee*, 687 F.3d 935 (8th Cir. 2012)..........................1, 31

*United States v. Looking Cloud*, 419 F.3d 781 (8th Cir. 2005)..............31

*United States v. Manfre*, 368 F.3d 832 (8th Cir. 2004)..........................35

*United States v. Manning*, 738 F.3d 937 (8th Cir. 2014) ......................31

*United States v. McArthur*, 573 F.3d 608 (8th Cir. 2009) ....................24

*United States v. McPike*, 512 F.3d 1052 (8th Cir. 2008) ......................32

*United States v. Miles*, 499 F.3d 906 (8th Cir. 2007)............................52

*United States v. Pappas*, 715 F.3d 225 (8th Cir. 2013) ..............39-40, 48

*United States v. Parker*, 267 F.3d 839 (8th Cir. 2001) ..........................47

*United States v. Pawlowski*, 682 F.3d 205 (3rd Cir. 2012)....................44

*United States v. Peck*, 496 F.3d 885 (8th Cir. 2007) ............................50

*United States v. Pizano*, 421 F.3d 707 (8th Cir. 2005) ..........................24

*United States v. Ruelas-Mendez*, 556 F.3d 655 (8th Cir. 2009).........52-53

*United States v. Shafer*, 573 F.3d 267 (6th Cir. 2009)............................44

*United States v. Starr*, 486 F. Supp. 2d 940 (N.D. Iowa 2007) ........43, 44

*United States v. Starr*, 533 F.3d 985 (8th Cir. 2008)..............................46

Appellate Case: 14-1337    Page: 7    Date Filed: 07/01/2014 Entry ID: 4170974

*United States v. Straw*, 616 F.3d 737 (8th Cir. 2010) ............................ 40

*United States v. Street*, 531 F.3d 703 (8th Cir. 2008) ............................ 47

*United States v. Stults*, 575 F.3d 834 (8th Cir. 2009) ...................... 39, 52

*United States v. Tate*, 633 F.3d 624 (8th Cir. 2011) ................................ 24

*United States v. Thirion*, 813 F.2d 146 (8th Cir. 1987) ...................... 1, 36

*United States v. Ultsch*, 578 F.3d 827 (8th Cir. 2009) ............................ 39

*United States v. Van Elsen*, 652 F.3d 955 (8th Cir. 2011) ...................... 31

*United States v. Varner*, 678 F.3d 653 (8th Cir. 2012) ............................ 49

*United States v. Yarrington*, 634 F.3d 440 (8th Cir. 2011) .............. 23, 31

## Statutes:

18 U.S.C. § 2241 .............................................................................. 41

18 U.S.C. § 2246 ......................................................................... 42-44

18 U.S.C. § 2251 .......................................................................... 2, 51

18 U.S.C. § 2252A .......................................................................... 2, 51

18 U.S.C. § 3231 .............................................................................. 1

18 U.S.C. § 3553 .................................................................... 40, 48-51

28 U.S.C. § 1291 .............................................................................. 1

Appellate Case: 14-1337     Page: 8     Date Filed: 07/01/2014 Entry ID: 4170974

**Other Authorities:**

Fed. R. Evid. 801 .................................................................... 35

Fed. R. Crim. P. 29 .................................................................. 4

USSG §2G2.1 ................................................... 4, 41-43, 45-47

USSG §2G2.2 ........................................................... 39, 46

USSG §3D1.4 ................................................................. 5

Appellate Case: 14-1337    Page: 9    Date Filed: 07/01/2014 Entry ID: 4170974

# JURISDICTIONAL STATEMENT

The district court had jurisdiction pursuant to 18 U.S.C. § 3231.

On February 3, 2014, the court entered final judgment, and on

February 10, 2014, defendant filed a timely notice of appeal. This Court

has jurisdiction over this criminal appeal pursuant to 28 U.S.C. § 1291.

# STATEMENT OF THE ISSUES

**I.** ***Whether the District Court Erred in Denying Defendant's Motion for Judgment of Acquittal?***

*United States v. Goodale*, 738 F.3d 917 (8th Cir. 2013)

**II.** ***Whether the District Court Erred in Overruling Defendant's Hearsay Objections to the Admission of Videos into Evidence at Trial or in its Handling of Defendant's General Request for a Limiting Instruction?***

*United States v. Lee*, 687 F.3d 935 (8th Cir. 2012)
*United States v. Thirion*, 813 F.2d 146 (8th Cir. 1987)
*United States v. DeMarce*, 564 F.3d 989 (8th Cir. 2009)

**III.** ***Whether the District Court Erred in Calculating the Guidelines or in Denying Defendant's Motions for Downward Departure and Variance, or Whether the Court Abused Its Discretion in Imposing a Substantively Reasonable Sentence?***

*United States v. Diaz*, 368 F.3d 991 (8th Cir. 2004)
*United States v. Feemster*, 572 F.3d 455 (8th Cir. 2009)

1

# STATEMENT OF THE CASE

## Relevant Procedural History

In June 2013, a grand jury returned an indictment charging defendant with one count of sexual exploitation of children under 18 U.S.C. §§ 2251(a) and 2251(e) (Count 1) and four counts of possession of child pornography after having previously been convicted of an offense relating to aggravated sexual abuse, sexual abuse, or abusive sexual conduct involving a minor under 18 U.S.C. §§ 2252A(a)(5)(B) and 2252A(b)(2) (Counts 2-5). (DCD 2).[1]

Defendant filed a motion in limine on August 30, 2013. (DCD 21). The motion included a request to exclude hearsay statements by law enforcement and witnesses who were available for testimony at trial,

---

[1] "DCD" refers to the district court docket in district court case number 13-CR-2014-LRR, and each reference is followed by the docket entry number. "PSR" refers to the presentence report (at DCD 49) and, unless otherwise noted, each reference is to a paragraph number in the report. "DB" refers to defendant's opening brief and is followed by the applicable page number. "PTR" refers to the transcript of the September 10, 2013 final pretrial conference; "TR" refers to the transcript of the September 16-17, 2013 trial; and "STR" refers to the transcript of the February 3, 2014 sentencing hearing. Each transcript citation is followed by the applicable page number. "EX" refers to government trial exhibits and is followed by the applicable exhibit number. "Add." refers to the government's addendum and is followed by the applicable page number.

2

but it did not mention any alleged hearsay statements contained on videos from defendant's computers.  (*Id.* at 1; DCD 21-1 at 2).

On September 9, 2013, in its trial memorandum, the government stated that it intended to offer into evidence child pornography videos taken inside defendant's apartment (Exhibits 1 and 2) and non-pornographic videos defendant had prepared (Exhibit 3).  (DCD 26 at 6).  It stated that it intended to call a witness to identify the voice on these videos.  (*Id.*).

During the pretrial conference on September 10, 2013, the government stated that it intended to play the audio from videos for government witness Renee B., so she could identify the voice on the videos.  (PTR 6, 14).  The Honorable United States District Court Chief Judge Linda R. Reade and the parties discussed the mechanics of how this evidence would be presented.  (PTR 14-17).  Earlier in the hearing, when asked if defendant had any objection to how the government intended to offer exhibits containing child pornography, defense counsel stated, "[t]hat's just about the way that I would suggest that the government do that, assuming foundation and hearsay objections and that sort of thing are . . . overcome."  (PTR 5).  The court and the parties

3

discussed the issues defendant raised in his motion in limine, these issues were largely undisputed, and the court granted the motion. (PTR 17-23; DCD 28).

A jury trial commenced on September 16, 2013. (DCD 32-34). At the conclusion of the government's case, defendant moved for a judgment of acquittal under Federal Rule of Criminal Procedure 29. (TR 194-96). The court denied defendant's motion. (TR 198). On September 17, 2013, the jury found defendant guilty. (DCD 39). After the verdict, defendant did not file a motion for judgment of acquittal or a motion for new trial.

Defendant was sentenced by the district court on February 3, 2014. (DCD 58). On Count 1, pursuant to USSG §2G2.1(d)(1), the presentence investigation report (PSR) included separate guidelines calculations for each of the four boys who was a victim of the offense. (PSR ¶¶ 18-53). For each victim, defendant did not object to the base offense level of 32 (PSR ¶¶ 18, 28, 38, 46) or the enhancement for the age of the victim (PSR ¶¶ 19, 29, 39, 47). The government withdrew its request for the distribution enhancement with respect to two of the victims. (DCD 53; STR 6-7). Over defendant's objection, the court

4

adopted the recommendations in the PSR with respect to the following specific offense characteristics: for all four victims, a two-level enhancement because the offense involved the commission of a sexual act or sexual contact (STR 26-28; PSR ¶¶ 20, 30, 40, 48); for two victims, a four-level enhancement because the offense involved material portraying sadistic or masochistic conduct (STR 26-27; PSR ¶¶ 22, 32); and for all four victims, a two-level enhancement because the victims were in defendant's custody, care, or supervisory control (STR 27-28; PSR ¶¶ 23, 33, 41, 49).

The court found that the adjusted offense levels for the four victims were 44, 44, 40, and 38. (STR 27-28). Based on the multiple count adjustment, the court added four levels to the highest offense level, for a combined offense level of 48. (STR 28; *see* USSG §3D1.4). Over defendant's objection, the court found a five-level enhancement applied for defendant's being a repeat and dangerous sex offender. (STR 28; PSR ¶ 58). The court calculated an offense level of 53 that became a total offense level of 43. (STR 21; PSR ¶ 60). Based on this offense level and his Category I criminal history, before considering the statutory maximum sentence, defendant's advisory guidelines range

Appellate Case: 14-1337    Page: 14    Date Filed: 07/01/2014  Entry ID: 4170974

was life imprisonment. (STR 28; PSR ¶ 110). The court denied

defendant's motions for a downward departure and a downward

variance. (DCD 51; STR 37-41). The court sentenced defendant to the

statutory maximum sentence of 1,320 months' (110 years')

imprisonment. (STR 41; PSR ¶ 110).

## Rulings Presented for Review

Defendant argues that the evidence was insufficient to sustain his

convictions. He contends that the district court erred in overruling his

hearsay objections to videos admitted into evidence and in not issuing a

limiting instruction when audio from two of the videos was played.

Defendant also argues the court erred at sentencing when it applied the

enhancement for the offense's involving the commission of a sexual act

or sexual contact and the enhancement for the offense's involving

material portraying sadistic or masochistic conduct. Further, he

contends that the court should have granted his motions for downward

departure or variance and that his sentence was substantively

unreasonable.

Appellate Case: 14-1337    Page: 15    Date Filed: 07/01/2014 Entry ID: 4170974

## Statement of the Facts

In 1961, defendant was convicted of Lascivious Acts With a Child in Jasper County, Iowa; the offense involved a boy under sixteen years of age. (PSR ¶ 62). In 1987, defendant was convicted of Sexual Abuse in the Third Degree in Bremer County, Iowa; the offense involved a sixteen-year-old boy. (PSR ¶ 66).

The evidence at trial established the following. On July 9, 2012, Deputy Michael Foland of the Fayette County Sheriff's Office met with four parents, including one parent of each of the four victims in this case. (TR 172-73). Each of these parents testified at trial and provided the birthdate for that parent's son. (TR 50, 75, 84, 91). The victims were eleven, ten, eleven, and twelve years old during the commission of the instant offenses in June and July 2012.

On July 10, 2012, deputies with the Fayette County Sheriff's Office executed a search warrant at defendant's apartment in Oran, Iowa. (TR 5, 173-74). Defendant lived alone in the apartment (TR 5-6, 174), and he operated a computer repair business out of the apartment

7

(TR 7). Deputies seized computers and other electronic items from the living room of the apartment.[2]

Chief Deputy James Davis testified that two black tower computers were seized from defendant's living room, and he identified the computers in photographs taken during the execution of the search warrant. (TR 6-15). One computer was labeled by law enforcement as item 47-1 (hereinafter "Computer 47-1"); this computer is referenced in Counts 1 and 2 of the indictment. (TR 9-10, 22; EX 50-51 (photographs of computer)). The other computer was labeled by law enforcement as item 47-2 (hereinafter "Computer 47-2"); this computer is referenced in Counts 1, 3, and 4 of the indictment. (TR 10-12, 22-23; EX 47-49 (photographs of computer)).

Davis testified that, when the search warrant was executed, Computer 47-1 was on. (TR 12). He used the mouse to click on icons, and photographs were displayed on the screen. (TR 12-13). He took digital pictures of the screen; six of these pictures were admitted into evidence. (TR 13-15; EX 40-45). These pictures included sexually explicit images of children. (EX 40-44).

_____

[2] Most of the computer equipment belonging to others was located in a separate room in the apartment. (TR 7).

8

Foland testified that a Canon camera was seized from defendant's living room, and he identified the camera in a photograph taken during the execution of the search warrant. (TR 175-176; EX 52).

Investigator Joseph Schmitz of the Cedar Rapids Police Department, a forensic examiner, testified regarding his examination of evidence seized from defendant's apartment. Computer 47-1 and Computer 47-2 each contained four hard drives, and some of these drives were partitioned into separate storage areas. (TR 24, 39-40). When Schmitz examined these computers, he found that some of the hard drives contained what appeared to be sexually explicit videos and images of children. (TR 28). He testified that he had prepared Exhibit 1 and Exhibit 2, two DVDs with videos from the computers. (TR 29). Exhibit 1 contained videos from a Western Digital hard drive from Computer 47-1 (referenced in Counts 1 and 2 of the indictment). (TR 29). Exhibit 2 contained videos from a Seagate hard drive from Computer 47-2 (referenced in Counts 1 and 4 of the indictment). (TR 29-30).

The following record was made:

MR. TREMMEL:     Government would offer Exhibits 1 and 2 into evidence.

9

MS. LAVERTY:       Your Honor, I'd have a hearsay objection as to what's said or depicted on the exhibits.

THE COURT:        I'm sorry, I don't understand your objection. Let's approach sidebar.

(The following was held at a sidebar.)

THE COURT:        At sidebar.  Ms. Laverty.

MS. LAVERTY:       Your Honor, I would object to Exhibits 1 and 2 insofar as they contain hearsay.  This witness indicates he copied files onto these DVDs, but if the government intends to play those DVDs and identify anybody in those exhibits, then I think that there needs to be a hearsay objection lodged and dealt with.

MR. TREMMEL:      I don't see what the assertion is, Your Honor.

THE COURT:        What is it that you say is hearsay?

MS. LAVERTY:       Your Honor, the – if the files are videos, as this gentleman testified to, and as I think – I think they are as well, and things are said or seen on the video itself, then there would be hearsay.

MR. TREMMEL:      To the extent things are said, they're not offered for the truth of the matter asserted, Your Honor.

THE COURT:        The objection is overruled.

(The following was held in open court.)

10

| THE COURT: | The objection is overruled.  You may proceed. |
|---|---|
| MR. TREMMEL: | May I approach, Your Honor? |
| THE COURT: | Certainly.  So Exhibits 1 and 2 will come into evidence. |

(TR 30-31).

Schmitz testified that he had prepared Exhibit 3, a DVD containing two videos from a separate Western Digital hard drive on Computer 47-1.  (TR 31-32; EX 3).  The following record was made:

| MR. TREMMEL: | Government offers Exhibit 3 into evidence. |
|---|---|
| MS. LAVERTY: | Same objection, hearsay. |
| THE COURT: | Overruled.  And Exhibit 3 comes into evidence. |

(TR 32).

Schmitz testified that he had prepared Exhibits 4 through 10, which contained data relating to the three videos on Exhibit 1 (EX 4-6), the two videos on Exhibit 2 (EX 7-8), and the two videos on Exhibit 3 (EX 9-10).  (TR 36-41).  He testified that this data included EXIF data, which provided the make and model of the camera used to create a picture or video and the date and time the picture or video was created.  (TR 34-35).  Based on the EXIF data provided in Exhibits 3 through 8,

11

the five videos on Exhibits 1 and 2 were created on or between June 23 and July 8, 2012. (EX 3-8).

The jury found that the three videos on Exhibit 1 and the two videos on Exhibit 2 constituted child pornography. (DCD 39 at 4 (interrogatory form for Count 2); *id.* at 8 (interrogatory form for Count 4)).

Schmitz testified that, on Computer 47-1, the hard drive with sexually explicit videos of children also contained partitions with sexually explicit images of children. (TR 96-99). Exhibits 19 through 24 contained some of these images and data relating to each image. (TR 97-100; EX 19-24). Schmitz testified that some of these images were of identified Iowa children and some were of unidentified children. (TR 96). The jury found that these six images constituted child pornography. (DCD 39 at 4 (interrogatory form for Count 2)).

Schmitz testified that, on computer 47-2, another Western Digital hard drive (referenced in Count 3 of the indictment and separate from the hard drive containing the videos in Exhibit 2) contained sexually explicit images of children. (TR 100-01). Exhibits 25 through 28 contained images of children and data relating to each image. (*Id.*; EX

Appellate Case: 14-1337     Page: 21     Date Filed: 07/01/2014 Entry ID: 4170974

25-28). Schmitz testified that these images were of children unknown to him. (TR 100-01). The jury found that the images in Exhibits 25 through 27 constituted child pornography. (DCD 39 at 6 (interrogatory form for Count 3)).[3]

Schmitz testified that he had examined the Canon camera and had found an SD card inside it. (TR 23, 101). He testified that he had found deleted images of children on this SD card (referenced in Counts 1 and 5 of the indictment). (TR 101-04). Exhibits 29 through 32 contained these images and data relating to each image. (TR 101-02; EX 29-32). The jury found that the images in Exhibits 29 through 32 constituted child pornography. (DCD 39 at 10 (interrogatory form for Count 5)).

Based on the EXIF data provided in Exhibits 19 through 21 and 29 through 31, the images in these exhibits were created on or between June 24 and July 8, 2012. (EX 19-21, 29-31).

---

[3] The image from Computer 47-2 in Exhibit 28 depicts a child on a toilet; it does not show the child's genitals and is not a sexually explicit image. The same image is depicted in Exhibit 46, which Foland testified was a picture of a photograph he observed in defendant's bathroom. (TR 177-79).

13

Schmitz testified he had prepared exhibits that he had redacted by drawing squares or rectangles over the genitals in the images. (TR 42-43, 106-07). Exhibits 11 through 18 contained still images captured from some of the videos on Exhibits 1 and 2. (TR 42). Exhibits 33 through 35 contained redacted versions of the images shown in Exhibits 19 through 21, and Exhibits 36 through 38 contained redacted versions of the images shown in Exhibits 29 through 31. (TR 106-07).

All four parents testified that they allowed their sons to go to defendant's apartment in the summer of 2012. (TR 51-53, 76-77, 85-86, 91). The parents identified their sons and some of the other boys depicted in Exhibits 11 through 12[4] and 14 through 18 (from the videos) and Exhibits 33 through 38 (from the images). (TR 58-61, 78-79, 86-87, 92-93).

One of the parents, Renee B., testified that she had known defendant for about ten years. (TR 50). During the spring and summer of 2012, she spoke with defendant every day or every other day. (*Id.*).

---

[4] One parent identified her son in Exhibit 12. (TR 86-87). Foland testified that the images in Exhibits 12 and 13 were from the same video, and he testified that the clothing of the boy depicted in Exhibit 12 matched the clothing of the boy whose face was not shown in Exhibit 13. (TR 185-86).

Appellate Case: 14-1337     Page: 23     Date Filed: 07/01/2014 Entry ID: 4170974

She had been to his apartment several times and had helped clean his apartment. (*Id.*). She testified that her son considered defendant as an adopted grandfather. (*Id.*).

While Renee B. was on the stand, the government played clips from all seven of the videos in Exhibits 1 through 3, but it did not show her the video from the clips. (TR 55-58). Renee B. identified defendant's voice in all seven clips. (*Id.*). Defense counsel did not object to the playing of the clips from Exhibits 1 and 3. (TR 55-58). Regarding the two clips from Exhibit 2, the following record was made:

MR. TREMMEL: Now the government is going to play a video from Exhibit 2, just the audio. This is the video referenced in Exhibit 7, and it's going to be approximately from 28 to 36 seconds.

(Whereupon, the recording was played.)

MS. LAVERTY: Your Honor, I'm going to object, and ask the Court to make a limiting instruction. I understand that the government is offering this not for the truth of the matter.

THE COURT: You may propose an instruction at the appropriate time. You may proceed.

Q. Ms. [Renee B.], do you recognize that voice?

A. Yes.

Q. Whose voice is that?

15

|          |                                                                                                                                                      |
|----------|------------------------------------------------------------------------------------------------------------------------------------------------------|
| A.       | Benton Stong.                                                                                                                                         |
| MR. TREMMEL: | Now I'm going to play another video from Exhibit 2. This is the video referenced in Exhibit 8, from approximately 11 to 15 seconds.                |

(Whereupon, the recording was played.)

|          |                                                                                                                                                      |
|----------|------------------------------------------------------------------------------------------------------------------------------------------------------|
| MS. LAVERTY: | Objection, same objection.                                                                                                                        |
| THE COURT: | I don't think there's any question it's not offered for the truth of the matter asserted. If you want a limiting instruction, you may put it in writing and submit it to the Court for consideration. |
| Q.       | Ms. [Renee B.], do you recognize the voice at the beginning of that clip?                                                                             |
| A.       | Yes.                                                                                                                                                  |
| Q.       | Whose voice was that?                                                                                                                                 |
| A.       | Benton Stong.                                                                                                                                         |

(TR 56-57).

Foland identified defendant's apartment as the location depicted in five images captured from sexually explicit videos of the boys. (TR 184-87; EX 11-14, 16). He also identified defendant's apartment as the location depicted in five redacted still images of the boys. (TR 180-83;

16

EX 34-38).[5]  Renee B. identified defendant's apartment as the location depicted in two of these images.  (TR 60; EX 34-35).  Foland and Davis both identified defendant's apartment as the location depicted in the pornographic images from Davis' digital pictures of the computer screen.  (TR 14-15, 188-89; EX 40-44).

Even though Davis' digital pictures were of images on the screen of Computer 47-1, Schmitz testified that he was unable to find these images when he examined Computer 47-1.  (TR 107-108).  Schmitz testified that, based on information he found on the computer and information shown in one of Davis' digital pictures, he believed he could not find the images because the encryption program TrueCrypt was installed on Computer 47-1.  (TR 109-14).  He testified that, if images were encrypted, once the computer was shut off, he would not be able to access the images without a password or passkey.  (TR 114).  Schmitz testified that the images of the boys shown in three of Davis' pictures

---

[5] These five images were the redacted versions of the images in Exhibits 20 through 21 and 29 through 31.  (TR 106-07).

Appellate Case: 14-1337     Page: 26     Date Filed: 07/01/2014 Entry ID: 4170974

(EX 42-44) matched three of the deleted images from the SD card found inside the Canon camera (EX 36-38).  (TR 108-09).[6]

Schmitz testified that the SD card also contained a still image from the video named "69.MOV" found on Computer 47-2.  (TR 120, 132-33, 139-40; EX 2 (containing video); EX 7 (containing data from same video)).  Data from Computer 47-2 indicated that this video was taken on July 3, 2012, using a Canon PowerShot SX150 IS.  (EX 7).  This was the model of the camera containing the SD card.  (EX 53 (stipulation of parties)[7]; TR 23, 170-71, 177).

Schmitz testified that operating systems on both Computer 47-1 and Computer 47-2 listed the registered owner as "Ben."  (TR 115-16).  Another operating system on Computer 47-2 contained the name "Ben Stong."  (*Id.*).

Schmitz testified that, on Computer 47-2, he found Internet search terms including "preteen erection," "little boy penis," "little girl tits," and "little girl pussy."  (TR 115).

---

[6] The images in Exhibits 40 and 41 did not correspond to any of the other exhibits introduced at trial.

[7] Exhibit 53 contained stipulations establishing the interstate commerce elements for all five counts in the indictment.

18

Schmitz testified that the Windows operating system usually stores information on files, including timestamps. (TR 32-33). He testified that a timestamp on a file called the "created date" generally is the date the file was saved on the hard drive or device. (TR 33, 118). One of the child pornography files on Computer 47-2, shown in Exhibit 25, had a created date of November 22, 2009. (EX 25; TR 119).

During its case-in-chief, the government played portions of the videos in Exhibits 1 through 3 for the jury. (TR 137-43).[8] Although the complete videos were not played for the jury, they were available for the jury to view during deliberations. (TR 137-38).

Exhibit 1 contains three videos with sexually explicit depictions of three of the victims. In the first video, entitled "MVI_0044.MOV," the camera is handed to one boy; that boy videotapes another boy who is masturbating. During this video, defendant's voice[9] can be heard saying, among other things, the following: "It's on 'movie' right now";

---

[8] Defendant contends that the videos were played again during the government's closing argument, acknowledging that this was based on counsel's memory. (DB 11-12). The government did not play the exhibits during closing argument; however, it did read to the jury the quotations from the videos that are set forth here.

[9] As outlined earlier, Renee B. identified defendant's voice from all seven videos in Exhibits 1 through 3.

Appellate Case: 14-1337     Page: 28     Date Filed: 07/01/2014 Entry ID: 4170974

"Don't push any buttons – just point it at 'em"; "You get it too close, it won't work"; "He's too close to it now; if he shoots, it probably won't show"; "Just hold that out about that far, and let him shoot, and then you can see it"; and "Make sure you got it pointed."  (EX 1).

In the second video on Exhibit 1, entitled "MVI_0048.MOV," two of the boys are in the living room; one of the boys then walks into the bathroom and begins to masturbate.  During this video, while the boys are in the living room, defendant's voice can be heard making comments including the following:  "Then if I hold it up – like that – I can see you jackin' off"; "Him, too, if he wants it"; "So just do it for a little bit, and then we'll show it back to you"; "So now he's in there – I s'pose he's in there jackin' off, and I can't see him"; and "What I'd like to see is see you shoot – if you can."  The operator of the camera then walks toward the bathroom and points the camera into the bathroom.  While the video is showing one boy in the bathroom, defendant's voice can be heard saying:  "You gonna let it shoot – or did you already?"  The boy responds, "I don't know if I can."  Defendant's voice can be heard saying, "If it'd make you feel any better, I'll shut the camera off."  (EX 1).

20

In the third video on Exhibit 1, entitled "_VI_1778.MOV," two of the boys are in the living room; one has a pump on his penis. Defendant's voice can be heard saying, "That ain't doin' much." (EX 1).

Exhibit 2 contains two videos with sexually explicit depictions of two of the boys. In the first video, entitled "69.MOV," the two boys are simultaneously performing oral sex on each other. During this video, defendant's voice can be heard making comments including the following: "[Victim's name]'s gettin' into it"; and "He grabbin' your butt." (EX 2).

In the second video on Exhibit 2, entitled "fuck.MOV," one boy is anally penetrating the other boy. During this video, defendant's voice can be heard saying, among other things, the following: "Just don't ram it – just push easy until you get it in"; and "I can't see, but that's all right. Just go ahead. If it feels good, do it." (EX 2).

Exhibit 3 contains two non-pornographic videos showing defendant's face in front of a webcam; his voice can be heard as he tests the audio on the system. (EX 3).

Appellate Case: 14-1337    Page: 30    Date Filed: 07/01/2014 Entry ID: 4170974

## SUMMARY OF THE ARGUMENT

The district court committed no error in denying defendant's motion for a judgment of acquittal because sufficient evidence supported defendant's convictions, including child pornography videos produced in defendant's apartment with his voice on the videos, child pornography images produced in defendant's apartment, the testimony of the four victims' parents identifying their children, and depictions of child pornography found on defendant's two computers and SD card.

The court did not err in overruling defendant's general hearsay objections to the admission of videos, including child pornography videos produced in defendant's apartment, where defendant never specified what statements in these videos were hearsay, and where the videos did not contain inadmissible hearsay. The court also did not err in its handling of defendant's general request for a limiting instruction.

The court did not err in applying the guidelines or in denying defendant's motions for a downward departure and variance, and defendant's within-guidelines sentence of 110 years' imprisonment was a substantively reasonable sentence.

22

# ARGUMENT

## I. The District Court Did Not Err in Denying Defendant's Motion for Judgment of Acquittal

Defendant argues the court should have granted his motion for judgment of acquittal. The court committed no error in denying defendant's motion for judgment of acquittal because sufficient evidence supported defendant's convictions.

### A. Standard of Review

This Court "reviews the denial of a motion for judgment of acquittal de novo, 'viewing the evidence in the light most favorable to the government, drawing all reasonable inferences in favor of the jury's verdict, and reversing only if no reasonable jury could have found the defendant guilty.'" *United States v. Goodale*, 738 F.3d 917, 922 (8th Cir. 2013) (quoting *United States v. Gregoire*, 638 F.3d 962, 968 (8th Cir. 2011)).[10]

---

[10] Defendant did not renew his motion for judgment of acquittal after the jury verdict. "Absent a timely Rule 29(c) motion," this Court has expressed "serious doubt whether any court may order an acquittal, as opposed to a new trial, after the jury has returned a guilty verdict." *United States v. Huntley*, 523 F.3d 874, 874 (8th Cir. 2008) (per curiam) (citing *Carlisle v. United States*, 517 U.S. 416 (1996)). However, in *United States v. Yarrington*, 634 F.3d 440 (8th Cir. 2011), the defendant made a motion for judgment of acquittal at the close of the evidence but

Appellate Case: 14-1337     Page: 32     Date Filed: 07/01/2014 Entry ID: 4170974

When this Court reviews the sufficiency of the evidence, "'[i]t is axiomatic that [this Court does] not pass upon the credibility of witnesses or the weight to be given their testimony.'" *Id.* at 923 (quoting *United States v. Clay*, 618 F.3d 946, 950 (8th Cir. 2010)). "'A conviction may be based on circumstantial as well as direct evidence. The evidence need not exclude every reasonable hypothesis except guilt.'" *United States v. Tate*, 633 F.3d 624, 628 (8th Cir. 2011) (quoting *United States v. Erdman*, 953 F.2d 387, 389 (8th Cir. 1992)). "[I]f the evidence rationally supports two conflicting hypotheses, the reviewing court will not disturb the conviction." *United States v. McArthur*, 573 F.3d 608, 614 (8th Cir. 2009) (quotation omitted). "'The standard for reviewing a claim of insufficient evidence is strict, and a jury's guilty verdict should not be overturned lightly.'" *Tate*, 633 F.3d at 628 (quoting *United States v. Pizano*, 421 F.3d 707, 719 (8th Cir. 2005)).

**B.    *The Evidence at Trial Supported the Jury's Verdicts***

Defendant argues there was insufficient evidence to show he was the person who used, persuaded, induced, or enticed the victims to engage in sexually explicit conduct. (DB 7). He also argues there was

did not renew his motion after the verdict; this Court reviewed the sufficiency of the evidence de novo. *Id.* at 446, 449-50.

24

insufficient evidence to prove he knew the child pornography was in his possession.  (DB 8-9).  The evidence was sufficient to sustain convictions on all five counts.

The crime of sexual exploitation of a child, as charged in Count 1, has four elements:  (1) between about June 2012 and July 2012, the four persons referenced in Count 1 were under eighteen years of age; (2) defendant used, persuaded, induced or enticed the referenced minors to engage in sexually explicit conduct; (3) defendant voluntarily and intentionally did this for the purpose of producing at least one visual depiction of such conduct; and (4) at least one visual depiction of such conduct was produced using materials that had been shipped or transported in interstate or foreign commerce.  (Add. 1 (Jury Instruction No. 13)).  The jury was instructed that it could only find defendant guilty if it unanimously agreed that at least one of the four minors was used in the commission of the offense.  (Add. 5 (Jury Instruction No. 16)).  The jury was instructed, "[a] person is 'used' if they are photographed or videotaped."  (Add. 4 (Jury Instruction No. 15)).

Appellate Case: 14-1337     Page: 34     Date Filed: 07/01/2014 Entry ID: 4170974

The crime of possession of child pornography, as charged in Counts 2 through 5, has three elements: (1) during the time period alleged in the count under consideration, defendant knowingly possessed one or more visual depictions of child pornography; (2) defendant knew that the visual depiction was of a minor engaging in sexually explicit conduct; and (3) the visual depiction had been produced using materials that had been shipped or transported in interstate or foreign commerce. (Add. 2 (Jury Instruction No. 14)). The jury was instructed that it could only find defendant guilty on each count if it unanimously agreed that one of the visual depictions for that count constituted child pornography. (Add. 5 (Jury Instruction No. 16)).

In this case, the age of the boys and the interstate commerce elements were not contested. The contested elements in Count 1 were the second and third elements. Defendant argues, "[t]he prosecution was required to prove that it was the *defendant* who used, persuaded, induced or enticed the minors to engage in sexually explicit conduct for the purpose of recording that conduct on camera." (DB 7). The contested elements in Counts 2 through 5 were the first and second elements. Defendant argues, "Stong does not suggest that he

26

was not the owner or possessor of the computers, camera, and digital media items in his apartment. Rather, Stong argues that the government has failed to prove he knew the images were in his possession." (DB 8-9).

The evidence was sufficient to sustain convictions on all five counts. First, witnesses identified defendant's apartment as the location of the five child pornography videos (EX 1-2) and seven of the child pornography images (EX 20-21, 29-31, 40-41).

Second, defendant's voice can be heard on all five videos. Renee B. had known defendant for ten years, and she identified his voice. In addition, a reasonable jury could compare the voice on the five videos with defendant's voice on the test videos from Exhibit 3.

Third, depictions of child pornography were found on four different items seized from defendant's apartment. On Computer 47-1, the Western Digital hard drive referenced in Count 2 contained pornographic videos of three of the boys (EX 1), pornographic images of two of the boys (EX 19-21), and other pornographic images depicting unknown children (EX 22-24). On Computer 47-2, the Western Digital hard drive referenced in Count 3 contained pornographic images

27

depicting unknown children. (EX 25-27). Also on Computer 47-2, the Seagate hard drive referenced in Count 4 contained two pornographic videos of two of the boys. (EX 2). In addition, the Kingston SD card referenced in Count 5 contained pornographic images of the boys. (EX 29-32).

Fourth, other evidence established that the same person used several of the electronic items for purposes related to child pornography. The SD card contained three images that Davis found on Computer 47-1, and the same SD card contained a still image from the video "69.WMV" that was saved on Computer 47-2. The SD card was found inside a Canon SX150 IS camera, and EXIF data showed that a Canon SX150 IS camera was used to take depictions found on Computer 47-1 (EX 4-5), Computer 47-2 (EX 7-8), and the SD card (EX 29-31). Further, the picture of the child on the toilet – taped to the bathroom wall of defendant's apartment (EX 46) – was also found on Computer 47-2 (EX 28).

Fifth, the computers were used by defendant. Computer 47-1 and Computer 47-2 listed the registered owner as "Ben," and another operating system on Computer 47-2 contained the name "Ben Stong."

28

Defendant ran a computer repair business, and the setup of his computers reflected his expertise. Some of the child pornography was stored on partitions within the hard drives, and some of the pornographic depictions of children Davis found on Computer 47-1 were not found after the computer was turned off because files on the computer were encrypted.

Sixth, although defendant speculates that "the children were making the videos and taking the pictures as part of exploration and play" (DB 8), there were other child pornography depictions on the computer before the summer of 2012. One child pornography image on Computer 47-2 had a created date of November 22, 2009. (EX 25).

Finally, defendant both "used" the boys and "persuaded, induced or enticed" the boys to engage in sexually explicit conduct for the purpose of producing at least one visual depiction of such conduct. He "used" the boys by videotaping them. The videos show defendant also "persuaded, induced or enticed" the boys. On one video, after handing the camera to one of the boys, defendant instructed the boy on how to make the video while the other boy masturbated. (EX 1; file named "MVI_0044.MOV"). On another video, he encouraged one boy to

29

masturbate before offering to turn off the camera. (EX 1; file named "MVI_0048.MOV"). On yet another video, he instructed one boy, "Just don't ram it – just push easy until you get it in." (EX 2; file named "fuck.MOV").

Based on the testimony and the exhibits admitted at trial, the evidence established defendant's guilt beyond a reasonable doubt on all five counts. The district court was correct in denying defendant's motion for judgment of acquittal, because the record does not establish that no reasonable jury could have found the defendant guilty of these charges.

## II. *The District Court Did Not Err in Overruling Defendant's Hearsay Objections to the Admission of Videos into Evidence at Trial or in its Handling of Defendant's General Request for a Limiting Instruction*

Defendant argues that the district court erred in overruling his hearsay objections to the videos in Exhibits 1 through 3 and in not issuing a limiting instruction when audio from two of the videos was played. (DB 9-14). The court did not err in its rulings, and any error was harmless.

Appellate Case: 14-1337    Page: 39    Date Filed: 07/01/2014 Entry ID: 4170974

## A.   Standard of Review

This Court "review[s] evidentiary rulings of a district court for abuse of discretion, *United States v. Yarrington*, 634 F.3d 440, 447 (8th Cir. 2011), giving substantial deference to the district court's determinations, *United States v. Van Elsen*, 652 F.3d 955, 958 (8th Cir. 2011)." *United States v. Manning*, 738 F.3d 937, 942 (8th Cir. 2014). "This court may reverse only if an error 'affects the substantial rights of the defendant' or has 'more than a slight influence on the [jury's] verdict.'" *Id.* (quoting *Yarrington*, 634 F.3d at 447).

This Court has "'repeatedly held that objections must be specific and that otherwise we will review evidentiary rulings only for plain error.'" *United States v. Lee*, 687 F.3d 935, 945 (8th Cir. 2012) (quoting *United States v. Johnson*, 450 F.3d 366, 371 n. 2 (8th Cir. 2006), in turn quoting *United States v. Carter*, 410 F.3d 1017, 1023 (8th Cir. 2005)).

"A party cannot preserve a claim of instructional error for appellate review unless he makes a sufficiently precise objection and also proposes an alternate instruction." *United States v. Looking Cloud*, 419 F.3d 781, 788 (8th Cir. 2005) (citing *Caviness v. Nucor-Yamato Steel Co.*, 105 F.3d 1216, 1220 (8th Cir. 1997)).

Appellate Case: 14-1337    Page: 40    Date Filed: 07/01/2014 Entry ID: 4170974

This Court "'will not reverse a conviction for an evidentiary error if the government establishes the error was harmless.'" *United States v. DeMarce*, 564 F.3d 989, 997 (8th Cir. 2009) (quoting *United States v. McPike*, 512 F.3d 1052, 1055 (8th Cir. 2008)). "An evidentiary error is harmless when, after reviewing the entire record, this [C]ourt determines that the substantial rights of the defendant were unaffected, and that the error did not influence or had only a slight influence on the verdict." *Id.* (citing *McPike*, 512 F.3d at 1055). "In other words, [this Court] will reverse only if the jury may have been substantially swayed by the improperly admitted evidence." *Id.* (citation and quotation omitted).

### B. The District Court Properly Overruled Defendant's Hearsay Objections and Properly Handled Defendant's General Request for a Limiting Instruction

Defendant argues that the district court should have not have admitted the videos in Exhibits 1, 2, and 3 into evidence over his hearsay objections (DB 9-11), and he contends that the court should have given a limiting instruction (DB 12-14). Defendant did not provide a specific basis for his hearsay objections or submit a specific limiting instruction. The court properly overruled defendant's hearsay

32

objections and provided him the opportunity to submit a limiting instruction.

Defendant did not raise his hearsay objections in his motion in limine. At the final pretrial conference, when the court and the parties discussed how the government intended to offer exhibits containing child pornography, defense counsel stated, "[t]hat's just about the way that I would suggest that the government do that, assuming foundation and hearsay objections and that sort of thing are . . . overcome." (PTR 5). However, defendant did not indicate any specific hearsay objections he would make.

At trial, when Schmitz was on the stand, the government offered Exhibits 1 and 2 (containing the child pornography videos of the boys) into evidence. (TR 30). Defense counsel stated, "I'd have a hearsay objection as to what's said or depicted on the exhibits." (*Id.*). Defense counsel then stated the exhibits "contain hearsay" and argued, "[t]his witness indicates he copied files onto these DVDs, but if the government intends to play those DVDs and identify anybody in those exhibits, then I think that there needs to be a hearsay objection lodged and dealt with." (*Id.*). After the government stated, "I don't see what the

33

assertion is," defense counsel stated, "if the files are videos, as this gentleman testified to, and as I think – I think they are as well, and things are said or seen on the video itself, then there would be hearsay." (TR 30-31).  The government responded that, "[t]o the extent things are said, they're not offered for the truth of the matter asserted . . . ." (TR 31).  The court overruled the objection.  (*Id*.).  When the government offered Exhibit 3 (containing defendant's test videos) into evidence, defense counsel stated, "[s]ame objection, hearsay," and the court overruled the objection.  (TR 32).

Defendant did not specify what statements on the videos allegedly were hearsay, and there was nothing in the record to support his objection.  In his brief, defendant argues, "some of the clips communicated more than just the quality of Stong's voice – they suggested the content of the video." (DB 11).  Defendant did not make this argument when the exhibits were offered into evidence.  In any event, the argument is without merit.

The videos did not contain inadmissible hearsay.  First, the videos contained child pornography, and the visual depictions themselves were

34

evidence of the videos' content. Statements on the videos were not offered to "suggest[] the content of the video."

Second, regardless of the content of what defendant said, his voice on the videos proved his presence during and participation in the recording of the videos.

Third, any assertions defendant made were admissible as statements of an opposing party. Fed. R. Evid. 801(d)(2)(A).

Fourth, some of defendant's instructions or directions to the boys were not assertions. The instructions that were assertions were not offered to prove the truth of any matters asserted. Fed. R. Evid. 801(c)(2).[11]

Defendant also argues that, when audio clips from Exhibit 2 were played for Renee B. to identify defendant's voice, the court should have given the jury a limiting instruction. (DB 13-14). Federal Rule of Evidence 105 provides:

---

[11] For example, when defendant stated, "Then if I hold it up – like that – I can see you jackin' off" (EX 1; file named "MVI_0048.MOV"), this statement was not offered to prove defendant could see anyone masturbating. The statement was relevant because defendant made it. *See United States v. Manfre*, 368 F.3d 832, 839 (8th Cir. 2004) (discussing admissibility of verbal acts).

Appellate Case: 14-1337    Page: 44    Date Filed: 07/01/2014 Entry ID: 4170974

> If the court admits evidence that is admissible against a party or for a purpose – but not against another party or for another purpose – the court, on timely request, must restrict the evidence to its proper scope and instruct the jury accordingly.

"A request for a limiting instruction should be specific and timely."

*United States v. Thirion*, 813 F.2d 146, 155 (8th Cir. 1987).

After Exhibits 1 through 3 were admitted into evidence, audio clips from the seven videos on these exhibits were played so Renee B. could identify defendant's voice. Defendant only objected to the playing of audio from the two child pornography videos on Exhibit 2. After the government played one clip, defense counsel stated, "I'm going to object, and ask the Court to make a limiting instruction. I understand that the government is offering this not for the truth of the matter." (TR 56). The court stated to defense counsel, "[y]ou may propose an instruction at the appropriate time." (*Id.*). Renee B. then identified defendant's voice from the clip. (TR 57). After the government played the second clip, defendant objected again, and the court stated, "I don't think there's any question it's not offered for the truth of the matter asserted. If you want a limiting instruction, you may put it in writing and submit

36

it to the Court for consideration." (*Id.*). Renee B. again identified defendant's voice from the clip. (*Id.*).

Defendant argues that "[t]he court's demand for a written instruction was merely a diversionary tactic – having had many years of experience as a trial judge, the court surely knew how to give, and should have given, an impromptu limiting instruction." (DB 12). The court's request for defendant to submit a written limiting instruction is understandable because defendant did not – and still has not – explained how his hearsay objection applied to the contents of the two videos on Exhibit 2. Defendant never informed the court what statements in the videos were objectionable, the specific grounds for the hearsay objection, or for what purposes he believed the jury could consider any objectionable statements. Further, defendant did not submit a written limiting instruction for the court to consider.

The court did not err in admitting Government Exhibits 1 through 3 into evidence, and it did not err in its handling of defendant's general request for a limiting instruction.

Appellate Case: 14-1337   Page: 46   Date Filed: 07/01/2014 Entry ID: 4170974

### C. Any Error in Overruling Defendant's Hearsay Objections or in Handling Defendant's Request for a Limiting Instruction Was Harmless

The district court did not err in overruling defendant's hearsay objections to Exhibits 1 through 3 and in handling his request for a limiting instruction, and any error was harmless. For the reasons outlined in Section I above, the evidence of defendant's guilt on all five counts was overwhelming. If any of the statements in Exhibits 1 through 3 were to be determined inadmissible hearsay, the admission of these statements would not have influenced or would have "had only a slight influence on the verdict." *DeMarce*, 564 F.3d at 997. None of these statements would have "substantially swayed" the jury. *Id.*

### III. The District Court Did Not Err in Calculating the Guidelines or in Denying Defendant's Motions for Downward Departure and Variance, and the Court Did Not Abuse Its Discretion in Imposing a Substantively Reasonable Sentence

Defendant argues his sentence was improper because the district court erred in applying the U.S. Sentencing Guidelines and imposed an unreasonable sentence. The court committed no procedural errors, and any error in calculating the guidelines was harmless. Further, the court imposed a substantively reasonable sentence.

38

## A. Standard of Review

In reviewing a sentence, this Court first "ensure[s] that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range." *United States v. Stults*, 575 F.3d 834, 847 (8th Cir. 2009) (quotation omitted). "On appeal of a sentence, [this Court] review[s] de novo the district court's application of the sentencing guidelines and its factual findings for clear error." *United States v. Burman*, 666 F.3d 1113, 1118 (8th Cir. 2012) (quotation omitted); *see United States v. Ultsch*, 578 F.3d 827, 829-30 (8th Cir. 2009) (reviewing the district court's factual findings supporting an enhancement under USSG §2G2.2(b)(3)(B) for clear error); *Stults*, 575 F.3d at 846-49 (same).

"A non-harmless error in calculating the guidelines range requires a remand for resentencing." *United States v. Stults*, 575 F.3d 834, 847 (8th Cir. 2009) (quotation omitted). Harmless error in sentencing occurs "when the district court would have imposed the same sentence absent the error." *United States v. Idriss*, 436 F.3d 946, 951 (8th Cir. 2006); *see United States v. Pappas*, 715 F.3d 225, 230 (8th Cir. 2013) (finding any error in guidelines calculation was harmless where district

39

court explicitly stated it would have imposed same sentence even if guidelines calculation were found to be in error); *United States v. Davis*, 583 F.3d 1081, 1094-95 (8th Cir. 2009) (finding any error in guidelines calculation was harmless where district court explicitly stated it would have imposed same sentence regardless of whether defendant was career offender).

This Court considers "the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard." *United States v. Feemster*, 572 F.3d 455, 461 (8th Cir. 2009) (en banc) (quoting *Gall v. United States*, 552 U.S. 38, 51 (2007)).

> An abuse of discretion occurs when:  1) a court fails to consider a relevant factor that should have received significant weight; 2) a court gives significant weight to an improper or irrelevant factor; or 3) a court considers only the appropriate factors but in weighing them commits a clear error of judgment.

*United States v. Farmer*, 647 F.3d 1175, 1179 (8th Cir. 2011) (citation omitted).

The burden is upon a defendant to show his sentence should have been lower considering the factors enumerated in 18 U.S.C. § 3553(a). *United States v. Straw*, 616 F.3d 737, 743 (8th Cir. 2010).  "[I]t will be the unusual case when [this Court] reverse[s] a district court sentence –

40

whether within, above, or below the applicable Guidelines range – as substantively unreasonable." *Feemster*, 572 F.3d at 464.

### B. The District Court Did Not Err in Applying the Two-Level Enhancement Under USSG §2G2.1(b)(2)(A) Because the Offense Involved a Sexual Act or Sexual Contact

Defendant argues that, with respect to all four victims, the district court should not have applied the enhancement under USSG §2G2.1(b)(2)(A) because defendant did not participate in sexual contact with the victims or direct or instruct them to engage in sexual contact with each other. (DB 21-26). The enhancement was properly applied because the offense involved two of the victims engaging in sexual acts and two of the victims engaging in sexual contact.

USSG §2G2.1(b) provides in pertinent part:

(2)  (Apply the greater) If the offense involved—

    (A)  the commission of a sexual act or sexual contact, increase by **2** levels; or

    (B)  (i) the commission of a sexual act; and (ii) conduct described in 18 U.S.C. § 2241(a) or (b), increase by **4** levels.

41

For purposes of USSG §2G2.1(b)(2), "sexual act" has the meaning given in 18 U.S.C. § 2246(2), and "sexual contact" has the meaning given in 18 U.S.C. § 2246(3). USSG §2G2.1, comment. (n.2).

18 U.S.C. § 2246 provides in pertinent part:

As used in this chapter—

(2)    the term "sexual act" means—

    (A)    contact between the penis and the vulva or the penis and the anus, and for purposes of this subparagraph contact involving the penis occurs upon penetration, however, slight;

    (B)    contact between the mouth and the penis, the mouth and the vulva, or the mouth and the anus;

    (C)    the penetration, however slight, of the anal or genital opening of another by a hand or finger or by any object, with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person; or

    (D)    the intentional touching, not through the clothing, of the genitalia of another person who has not attained the age of 16 years with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person;

(3)    the term "sexual contact" means the intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh,

Appellate Case: 14-1337    Page: 51    Date Filed: 07/01/2014 Entry ID: 4170974

or buttocks of any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person[.]

USSG §2G2.1(b)(2) uses the language "[i]f the offense involved . . ."; it does not require evidence that a defendant participated in the sexual act or sexual contact.[12]

Regarding the two victims listed in paragraphs 20 and 30 of the PSR, the "sexual act" alternative of USSG §2G2.1(b)(2)(A) applies. Defendant videotaped the victims as they engaged in oral and anal sex. (EX 2; files named "69.MOV" and "fuck.MOV"; PSR ¶ 7).  In the video depicting them engaging in anal sex, defendant offered instructions on how to perform the act.  (EX 2; file named "fuck.MOV").

Regarding the two victims listed in paragraphs 40 and 48 of the PSR, the "sexual contact" alternative of USSG §2G2.1(b)(2)(A)

---

[12] Defendant contends two courts have ruled that 18 U.S.C. § 2246(2) requires defendant to be one of the two parties involved in a sexual act.  (DB 16 (citing *United States v. Hayward*, 359 F.3d 631 (3d Cir. 2004); *United States v. Starr*, 486 F. Supp. 2d 940 (N.D. Iowa 2007)).  *Hayward* involved the issue of whether a "sexual act" required skin-to-skin contact between two persons; the two persons in that case were the defendant and one of his victims.  359 F.3d at 640-41.  *Starr* involved the issue of whether a victim's self-masturbation (at the defendant's direction) qualified as a "sexual act" under § 2246(2)(C), which required the touching "of another."  486 F. Supp. 2d at 947. Neither case held that § 2246(2) required that the defendant be one of the two persons participating in a "sexual act."

43

applies.[13]  Defendant videotaped both victims as they masturbated.

(EX 1; files named "MVI_0044.MOV" and "MVI_0048.MOV"; PSR ¶ 7).

The victims' masturbation does not satisfy the definition of a "sexual

act" under 18 U.S.C. § 2246(2)(D), which refers to the intentional

touching "of another person . . . ." *United States v. Starr*, 486

F. Supp. 2d 940, 946-48 (N.D. Iowa 2007).  However, the victims'

masturbation does satisfy the definition of "sexual contact" under 18

U.S.C. § 2246(3), as this definition refers to the touching of "any

person . . . ." *See United States v. Shafer*, 573 F.3d 267, 273 n.4 (6th

Cir. 2009) (distinguishing *Starr*).  *See also United States v. Pawlowski*,

682 F.3d 205, 211-13 (3rd Cir. 2012) (holding that defendant's

masturbation on webcam constituted sexual contact under 18 U.S.C.

§ 2246(3)).

---

[13] Defendant states, "Alternatively, the government argues that a "sexual act" was committed when Stong recorded each of the boys self-masturbating."  (DB 17).  The government is not arguing this.  For the reasons outlined above, the victims' masturbation qualifies as "sexual contact" under 18 U.S.C. § 2246(3).

Defendant argues that "[t]he district court cannot rely on the PSIR as evidence if a timely objection was made," and he states that "the prosecution introduced no testimony or other evidence in support of the enhancement."  (DB 20).  Defendant did not object to paragraph 7 of the PSR, and the two videos supporting the enhancement were admitted into evidence at trial.  (EX 1).

44

Because the offense involved each of the four victims engaging either in sexual acts or sexual contact, the court did not err in applying the enhancement under USSG §2G2.1(b)(2)(A) with respect to both victims.

### C. The District Court Did Not Err in Applying the Four-Level Enhancement Under USSG §2G2.1(b)(4) Because the Offense Involved Material Portraying Sadistic or Masochistic Conduct

Defendant argues the district court improperly imposed the four-level enhancement for the offense's involving material portraying sadistic or masochistic conduct under USSG §2G2.1(b)(4). The enhancement was applied for the two victims depicted in the two videos in Exhibit 2. The court did not err in finding that the enhancement for material portraying sadistic or masochistic conduct applied with respect to the two victims.

In one of the videos in Exhibit 2, defendant taped two of the victims, aged 10 and 11, engaging in oral sex at the same time. (PSR ¶ 7; EX 2). In the other video, defendant taped the same two victims engaging in anal sex and instructed them on how to perform the act.

Appellate Case: 14-1337     Page: 54     Date Filed: 07/01/2014 Entry ID: 4170974

(PSR ¶ 7; EX 2).[14]  Given the age of the victims and the nature of the acts, both videos depict sadistic or masochistic conduct.

In *United States v. Diaz*, 368 F.3d 991 (8th Cir. 2004), this Court described depictions that were sadistic under USSG §2G2.2:

> The images in this case depict the sexual penetration of a minor girl by an adult male with his penis, a young boy performing fellatio on an adult male, an adult male performing anal sex on a minor girl, prepubescent girls performing fellatio on an adult male, a group of adolescent boys ejaculating on a grimacing prepubescent boy, and an adolescent male performing anal sex on a young boy.  We conclude the images are sadistic or depictions of violence within the meaning of §2G2.2(b)(3).

*Id.* at 992 (citations omitted).[15]

The language for the enhancement in USSG §2G2.1 is identical to the language for the corresponding enhancement in USSG §2G2.2.  Two cases involving USSG §2G2.1(b)(4) have cited cases addressing the enhancement under USSG §2G2.2.  *See United States v. Starr*, 533 F.3d 985, 1001-02 (8th Cir. 2008) (finding seventeen-year-old victim's

---

[14] Defendant argues that "the government presented no evidence in support of the enhancement at sentencing."  (DB 25).  The two videos supporting the enhancement were admitted into evidence at trial.  (EX 2).

[15] In 2004, the enhancement for sadistic or masochistic conduct in USSG §2G2.2 was in USSG §2G2.2(b)(3).

46

self-penetration with foreign object met definition of "violence" under USSG §2G2.1(b)(4) (citing *United States v. Parker*, 267 F.3d 839, 847 (8th Cir. 2001)); *United States v. Street*, 531 F.3d 703, 711 (8th Cir. 2008) (finding anal sex with minor was sadistic or violent under USSG §2G2.1(b)(4)) (citing *Diaz*, 368 F.3d at 992).

Defendant argues that "the better approach is the one that requires an objective assessment of what is *actually depicted* in the image, not just a prudish reaction to relatively normal behavior." (DB 26).

The two videos in Exhibit 2 do not depict "relatively normal behavior." First, the victims were 10 and 11 years old. Second, defendant directed them to engage in anal sex and videotaped them performing oral sex on each other at the same time. Both videos depict sadistic or masochistic conduct, and the court did not err in applying the enhancement under USSG §2G2.1(b)(4) with respect to both victims.

## D.    *Any Error in the Court's Guidelines Rulings Was Harmless*

The district court did not err in its guidelines calculation, and any error in the court's rulings would not have affected the sentence

47

defendant received. First, defendant's offense level was 53, which became a total offense level of 43. Even had defendant prevailed on both of the guidelines issues he is appealing, his total offense level still would have been 43.

Second, the court found that 110 years' imprisonment was an appropriate sentence based on the factors in 18 U.S.C. § 3553(a). (STR 36-41). The court explained:

> I would also make the additional record that if the Court erred in the computation of the advisory guidelines, the Court would still impose the very same sentence, because it is the sentence that is sufficient but not greater than necessary to achieve the goals of sentencing. If I've erred in the computation of the advisory guidelines, I would vary to arrive at the sentence that I'm going to impose because of the very serious nature of the criminal conduct, the fact that four minor – minors were victims of this offense, the fact that this is his third prosecution and conviction for sexual crimes against children. He added four additional children to his victim list. And even though he is over age 75, he is still a danger to the community because I believe he is at high risk to reoffend. Nothing has changed.

(STR 40-41). Based on these statements by the court, any error in the guidelines calculation was harmless. *See Pappas*, 715 F.3d at 230 ("Since the district court explicitly stated that it would have imposed a 480 month sentence regardless of the guidelines, any error in applying the guidelines would be harmless."); *Davis*, 583 F.3d at 1095 ("Because

48

the district court explicitly stated it would have imposed a sentence of 293 months imprisonment regardless of whether Davis was a career offender, any error on the part of the district court is harmless, and we affirm.").

### E. The District Court Did Not Err in Denying Defendant's Motions for Downward Departure and Variance, and the Court Did Not Abuse Its Discretion in Considering the Factors Under 18 U.S.C. § 3553(a) and in Imposing a Substantively Reasonable Sentence

Defendant argues the court should have granted a downward departure or downward variance, and he argues his sentence was unreasonable. (DB 27). The court considered all of the factors under 18 U.S.C. § 3553(a), and defendant's within-guidelines range sentence was reasonable.[16]

Where "the sentence imposed is within the advisory guideline range, [this Court] accord[s] it a presumption of reasonableness."

---

[16] Defendant acknowledges that this Court "generally will not review a district court's refusal to grant a downward departure unless there was an unconstitutional motive or the sentencing court thought it did not have authority to grant the departure." (DB 27 (citing *United States v. Varner*, 678 F.3d 653, 658 (8th Cir. 2012)). He then argues at length why he should have received a downward departure, but he does not contend that the court had an unconstitutional motive or thought it lacked authority to grant a departure. (DB 27-33). The court made clear that it was aware it could depart downward and that it declined to do so. (STR 37-38).

Appellate Case: 14-1337    Page: 58    Date Filed: 07/01/2014 Entry ID: 4170974

*United States v. Bauer*, 626 F.3d 1004, 1010 (8th Cir. 2010) (citations omitted). It is defendant's burden to rebut the presumption and to show his sentence should have been lower. *United States v. Peck*, 496 F.3d 885, 891 (8th Cir. 2007). Defendant has not met this burden.

Here, the district court stated, "In arriving at a disposition, the Court has carefully considered each and every factor under 18 United States Code Section 3553(a)." (STR 36). The court recognized that, "obviously, I have the power to depart downward, or, actually, vary downward . . . ." (STR 37).

In response to defendant's argument that his age and physical condition warranted a departure or variance (DCD 51 at 7-10; STR 29-32), the court stated, "Defendant committed these offenses when he was 75 years old and with the very same health issues that he argues today." (STR 38).

In response to defendant's argument that home confinement with electronic monitoring would be effective and less expensive (DCD 51 at 9-10; STR 30-31)[17], the court stated, "[h]e committed these offenses at

_____

[17] Defendant argues, "A sentence of time served and home confinement with electronic monitoring by GPS and/or VICAP would best serve the purposes enumerated in 18 U.S.C. § 3553(a)." Defendant

50

his apartment, and thus, any type of monitoring, such as electronic monitoring, would be absolutely useless as a tool to manage him. It may be more efficient, it may save the government money, but that's not what this is about." (STR 38).

The court noted this offense was "Mr. Stong's third prosecution and conviction for offenses against children," and it stated, "Mr. Stong is a very definite threat to the community, to young boys." (*Id.*). The court reviewed defendant's two prior sex convictions for offenses he committed at ages 24 and 49. (STR 38-39; PSR ¶¶ 62, 66). The court stated, "[t]hings have not changed. In fact, now we have five more little boys who have – four more little boys who have been victimized by this man." (STR 39).

The court found that, under 18 U.S.C. § 3553(a), the aggravating factors outweighed the mitigating factors for defendant:

> His health conditions have not deterred him from
> victimizing children. His age and health situation do not
> outweigh the aggravating factors, specifically, his danger to
> the community, his high risk to reoffend, and the need for

---

is not eligible for a sentence of time served and home confinement due to the mandatory minimum sentences of 15 years' imprisonment on Count 1 and 10 years' imprisonment on Counts 2 through 5. 18 U.S.C. §§ 2251(a) and 2251(e) (Count 1); 18 U.S.C. §§ 2252A(a)(5)(B) and 2252A(b)(2) (Counts 2-5); PSIR ¶ 109.

51

the sentence imposed to promote respect for the law, afford adequate deterrence to this criminal conduct, and provide just punishment.

(STR 39-40).

This Court has "held that where the district court heard argument from counsel about specific § 3553(a) factors, [it] may presume that the court considered those factors." *United States v. Keating*, 579 F.3d 891, 893 (8th Cir. 2009) (citing *United States v. Miles*, 499 F.3d 906, 909 (8th Cir. 2007)).

"Where the district court in imposing a sentence makes 'an individualized assessment based on the facts presented,' addressing the defendant's proffered information in its consideration of the § 3553(a) factors, such sentence is not unreasonable." *Stults*, 575 F.3d at 849 (8th Cir. 2009) (quoting *Gall*, 552 U.S. at 50). That is precisely what the district court did here.

> The district court's decision to place greater emphasis in this case on factors that favored a sentence within the advisory range, such as the need to deter criminal conduct, to protect the public, and to avoid unwarranted sentence disparities, than on other § 3553(a) factors that might favor a more lenient sentence is a permissible exercise of the considerable discretion available to a sentencing court under the post-*Booker* regime.

52

*United States v. Ruelas-Mendez*, 556 F.3d 655, 658 (8th Cir. 2009). The court had "substantial latitude to determine how much weight to give the various factors under § 3553(a)," *id.* at 657, and defendant's disagreement with the court's decision does not show an abuse of discretion.

This is not "the unusual case when [this Court] reverse[s] a district court sentence . . . as substantively unreasonable." *Feemster*, 572 F.3d at 464. Defendant has failed to meet his burden to show the district court abused its discretion in imposing a within-range sentence, and defendant's sentence was reasonable.

53

## CONCLUSION

For the above reasons, defendant's conviction and sentence should be affirmed.

Respectfully submitted,

KEVIN W. TECHAU
United States Attorney

By: s/ Mark Tremmel

MARK TREMMEL
Assistant United States Attorney
111 7th Avenue SE, Box 1
Cedar Rapids, IA  52401-2101
(319) 363-6333
(319) 363-1990 (Fax)
Mark.Tremmel@usdoj.gov

54

## CERTIFICATE OF FILING AND SERVICE

I certify that on July 1, 2014, I, Sali Van Weelden, Legal Assistant for the Attorney for Plaintiff-Appellee, the United States of America, electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit using the CM/ECF system. The electronic brief and the addendum attached to the brief, if any, have been scanned for viruses using Trend Micro OfficeScan and the scan showed no virus.

I further certify that on _____, 2014, I submitted ten paper copies of the brief to the Clerk of Court and one paper copy to each party separately represented or proceeding pro se.

KEVIN W. TECHAU
United States Attorney

BY:  /s/ Sali Van Weelden

Copies to:
Anne Laverty
1636 42nd Street NE
Cedar Rapids, IA 52402

Appellate Case: 14-1337    Page: 64    Date Filed: 07/01/2014 Entry ID: 4170974

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

I certify that the foregoing brief complies with the type volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B). The brief uses a proportional-spaced typeface, fourteen-point Century Schoolbook font. Based on a count under Microsoft Word Version 2010 for Windows, the brief contains 10,893 words, excluding the table of contents, table of authorities, statement with respect to oral argument, and addendum, and certificates of counsel.

KEVIN W. TECHAU
United States Attorney

By: /s/ Mark Tremmel

_____

MARK TREMMEL
Assistant United States Attorney

56